SMITH v. SUN PRINTING & PUB. ASS'N.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. FEDERAL COURTS—JURISDICTION—PROOF OF CITIZENSHIP.

In an action by a married woman for libel, the testimony of the plaintiff's husband, that he has resided at Toronto, Can., all his life, and of the plaintiff, that she has been married nearly six years, during which time she has also resided there, is sufficient to establish an averment of the complaint that the plaintiff is a British subject, and resides at Toronto, Can., especially when no objection to the sufficiency of the evidence is interposed at the trial.

2. LIBEL—COMPETENCY OF EVIDENCE—HARMLESS ERROR.

In an action for libel, alleged error in allowing witnesses to answer question, "Did you know to whom the article related?" does not prejudice the

defendant, even if the testimony be incompetent, when there was practically no dispute as to the identity of the person referred to; when no evidence was introduced to show that the article could apply to any other person than the plaintiff; when the defendant permitted testimony as to facts conclusively identifying the plaintiff with the person referred to in the libel to be received without objection, and without contradicting it in any way; and when the defendant permitted the court to instruct the jury that the plaintiff was the person referred to, without excepting to the charge.

8. SAME—HEARSAY EVIDENCE—HARMLESS ERROR.

In an action for libel in publishing the statement that the plaintiff, a married woman, had eloped with a person not her husband, the reception of hearsay testimony of the plaintiff that her husband made an arrangement with her companion that he should accompany her on a journey is not ground for reversal, when it appears that the husband subsequently testified, of his own knowledge, without objection, to the same arrangement, and his testimony was not disputed or controverted by other proof.

4. SAME—EVIDENCE—SUITS AGAINST OTHER NEWSPAPERS.

In an action for publishing a libel in a newspaper, testimony that the plaintiff has also commenced suits against other newspapers for the publication of other similar libels is irrelevant and immaterial, and is properly excluded.

5. SAME—EVIDENCE—WRITER OF ARTICLE.

In an action against a newspaper for libel, in which it is conceded that the defendant did not write the libelous article, but received it in the regular course of business from a news agency on which it was in the habit of relying for accuracy, and published the article relying on the source whence it came, the exclusion of evidence as to who wrote the article does not prejudice the defendant, when the court instructs the jury that the source from which the defendant received the article may be considered in mitigation of the defendant's act, and that the plaintiff has not proved actual malice or personal ill will.

6. SAME—IMPLIED MALICE—INSTRUCTIONS TO JURY.

In an action for libel, even if there be no evidence of actual malice, it is not error to instruct the jury that the law implies malice, when the court also correctly states the distinction between actual and implied malice, and the rule of law to be applied in cases where actual malice or personal ill will is not shown, and also expressly charges that the plaintiff has not proved personal ill will.

7. SAME—INSTRUCTIONS—OPINION OF COURT ON THE FACTS.

A federal court may, in submitting a case to the jury, express its opinion on the facts, and it is not error, in an action by a married woman for libel, for the court to charge that the libel complained of is "a sensational statement of the plaintiff's disgrace," or that it charged "an act of the greatest dishonor to a wife," or that "it was calculated to cause great injury to her reputation," and was a "most damaging article," when the libelous article asserted, in a sensational manner, that the plaintiff had eloped with a person not her husband.

8. SAME—INSTRUCTIONS—SOURCE OF INFORMATION—PUNITIVE DAMAGES.

In an action against a newspaper for publishing a libelous article received by it from a news agency, the jury are properly instructed that if they think that the fact that the article was received, in the ordinary course of business, from a reliable and unusually correct news agency, is sufficient to excuse the defendant from inquiry and delay before publication, punitive damages should not be given, but that, if they think that the defendant was guilty of reprehensible negligence in publishing the article without verification of its truth, then punitive damages may be given. Morning Journal Ass'n v. Rutherford, 2 C. C. A. 354, 51 Fed. Rep. 513, followed.

9. SAME—MEASURE OF DAMAGE—INSTRUCTIONS.

In an action for libel the jury may properly be instructed that the amount of the plaintiff's damage cannot possibly be arrived at by arithmetical calculation, when further instructions are given that the plaintiff

is entitled to compensation for actual injury received, and that, while the amount is in their control, the amount given should be reasonable and just.

10. SAME—INSTRUCTIONS—PLACE OF PUBLICATION.

In an action against a newspaper for libel, the refusal of instructions that there is no proof of any publication of the libelous article in the city of the plaintiff's home, and that the fact should be considered in fixing the damages, is not reversible error, when the court has already instructed the jury that the article was not published in that city, and that, so far as it is known, there are no people there who habitually take the paper, and it is not displayed on the news stands.

11. SAME—PUBLICATION—APPARENT FALSITY.

In an action for libel, an instruction that, according to the testimony, the only persons who have read the libelous article are intimate friends of the plaintiff, who knew it to be untrue, is properly refused, when the testimony brought out on the cross-examination of a witness is inconsistent with the requested charge.

12. SAME—ACTUAL DAMAGE—INSTRUCTIONS.

Although no special damage be shown, the law presumes injury to reputation and feelings by the publication of an article which is libelous per se, and, when the publication and the falsity of the article have been proved, defendant is not entitled to have the jury instructed that there is no evidence tending to show actual damage to the plaintiff by the publication of the libel.

13. SAME—INSTRUCTIONS—CONDUCT OF THE PRESS—CORPORATIONS.

Although requested instructions that "the general conduct of the public press has nothing to do with this case," and that, "whether a newspaper is published by a corporation or an individual, it matters not," are correct as abstract propositions, yet the refusal to so charge is not reversible error, when there is nothing in the record to show that such instructions are material to a proper consideration of the case by the jury.

14. NEW TRIAL—DAMAGES—EXCESSIVE VERDICT.

When the proper rule for the computation of damages has been given to the jury, a verdict cannot be set aside as excessive, in the federal courts, upon a writ of error.

15. SAME—APPEAL.

A decision upon a motion for a new trial is not the subject of review in a federal appellate court.

In Error to the Circuit Court of the United States for the Southern District of New York.

At Law.   Action by Juliette C. Smith against the Sun Printing & Publishing Association for libel.   Verdict for plaintiff.   Motion for a new trial denied.   50 Fed. Rep. 399.   The defendant brings error.   Affirmed.

Franklin Bartlett, for plaintiff in error.
J. D. Fessenden, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge.   Plaintiff is a married woman, residing with her husband at Toronto, Can.   In the month of June her husband came to New York, and on the 8th of that month plaintiff left Toronto to join him there.   By a prior arrangement between them, she was accompanied on her journey by a Mr. Edward Rutherford, of Toronto,—a friend of her husband and herself. When the train arrived, they were met at the station by her husband.   On June 14, 1890, the following statement appeared in the

Evening Sun, a daily paper published in the city of New York by the defendant:

"Did She Go with a Handsomer Man?

"Reported Sensational Elopement in Canadian High Life.

"Toronto, Ontario, June 13th. Society was excited last night about the elopement of Mrs. Smith, the wife of one of the biggest merchants in Toronto, and Edward Rutherford, who belongs to one of the first families. He is a bachelor of thirty. For some time past their intimacy was freely spoken of, and when both were missing, and no explanations were given, tongues wagged freely. A private dispatch from New York, received last night, said they were both seen in that city. Mr. Smith had paid no attention to the scandalous talk until the receipt of this message, when he at once started for New York. His friends say that he has not lost confidence in his wife, and that his object is to trace her actions in Montreal and Boston."

The article was forwarded to the defendant, in the regular course of business, by a news agency to which it was a subscriber, and was published without any effort at verification of its statements. Although it was admitted by the defendant that the charge therein contained—that plaintiff had eloped from her husband—was false, no retraction was ever published in defendant's paper.

Plaintiff brought her action for libel, and upon a trial before Judge Shipman and a jury recovered a verdict of $7,500. A motion was thereupon made to the trial judge to set the verdict aside, which was denied. To review errors in the trial below, this writ of error was taken.

The general subject of the responsibility of proprietors of newspapers for libels such as this, and published in the same way, was discussed by this court in Morning Journal Ass'n v. Rutherford, 2 C. C. A. 354, 51 Fed. Rep. 513, where the same libel, except for the headlines, was before the court. It will only be necessary, therefore, to dispose of the several exceptions reserved in the case at bar, and argued by the plaintiff in error.

1. Defendant contends that the circuit court had no jurisdiction of the case, because the requisite citizenship of the plaintiff did not appear of record. It is averred in the first paragraph of the complaint that plaintiff "is, and always has been, an honest, moral, and loyal subject of her majesty, Victoria, queen of England, and as such has resided for a long time, and now resides, at Toronto, Can.," etc. The answer admits the residence at Toronto, but denies any knowledge or information sufficient to form a belief as to the other allegations set forth in said first paragraph. John C. Smith, the plaintiff's husband, testified that he had "lived in Toronto all his life." If so he must have been born there, and was therefore a British subject. The plaintiff testified on October 20, 1891, that she had been married to John C. Smith "nearly six years," during which time she also resided there. By her marriage, her nationality became that of her husband, and the evidence is quite sufficient to establish the averments of the complaint, especially as no objection to its sufficiency was interposed at the trial.

2. Defendant contends that the court erred in allowing one witness to answer the question, "Did you know to whom the article [the libel] related when you read it?" and another to answer the

question, "Did you know to whom it alluded?" Having answered these questions in the affirmative, the witnesses were both asked to "state the reasons why they knew." The defendant relies on the cases of Van Vechten v. Hopkins, 5 Johns. 211, Maynard v. Beardsley, 7 Wend. 560, and Gibson v. Williams, 4 Wend. 320, in which it is held that in an action for libel a witness should not be allowed to state his opinion as to whom he understood the defendant to mean, but must be strictly confined to a statement of facts, from which it is for the jury, under direction of the court, to draw such inferences as may be warranted. We do not deem it necessary in this case to enter into any extended discussion as to the authority of these cases, and to what extent, if at all, a witness who is not an expert may testify to his opinion or judgment, when said opinion is coupled with a statement in detail of the facts and circumstances upon which he founds it,—an exception from the general rule well recognized in certain cases. Insurance Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. Rep. 533. In the case at bar, although the answer denied that the article complained of was published of or concerning the plaintiff, and averred that it referred "to some other Mrs. Smith," there was practically no dispute as to the identity of the person referred to. No evidence whatever was introduced to show that there was any other Mrs. Smith to whom the article could apply. It was testified by a witness well acquainted with the parties, and who had resided in Toronto for 29 years, that there was not in 1890 any person in Toronto, other than the Edward Rutherford above mentioned, to whom the article could relate, or who in any way answered the description contained in the article, and that there was not at the time mentioned in Toronto any Mrs. Smith, other than the plaintiff, who was known to be on terms of intimate acquaintance with the said Edward Rutherford. To this evidence defendant did not object. Irrespective entirely of all testimony as to the opinions of witnesses, there was evidence, wholly uncontradicted and unquestioned, of facts which abundantly established the identity of plaintiff with the Mrs. Smith named in the libel. In the absence of any evidence showing the existence of any other Mrs. Smith to whom the article might apply, the circumstance that plaintiff was the Mrs. Smith who early in June went from New York to Toronto with Edward Rutherford was quite sufficient to warrant the conclusion that she was the individual referred to as an eloping wife. In this view, defendant, upon the trial, seems to have concurred, for he took no exception to the charge of the court that there was "no room for doubt that the plaintiff was the Mrs. Smith to whom the defamatory publication referred, and concerning whom the libel was uttered by its original author," and "that the only question in real and actual dispute is the question of damages." If, then, the admission of the opinions of the two witnesses above referred to was error, it did not prejudice the defendant. Perfectly competent evidence, to which no objection was interposed, so abundantly established the affirmative of that issue against the defendant that the court was justified in taking it from the jury, as it practically

did, and the objectionable evidence, which was confined to this issue, could not have operated to the defendant's detriment upon their minds.

3. The exceptions argued in defendant's 5th, 8th, 9th, and 10th points may be disposed of in like manner. They all relate to the admission of testimony bearing on the question of identity. If every item of testimony thus objected to were thrown out, there would be sufficient left in the case, in the absence of a scintilla of evidence that the article was intended to apply to any one else, to warrant a court in instructing the jury that, upon the question of identity, the plaintiff had made out her case by undisputed testimony. Therefore, if all defendant's objections above enumerated were sound, the admission of the evidence they cover has worked no prejudice.

4. The defendant also excepted to the admission of testimony by the plaintiff as to an arrangement alleged to have been made between her husband and Mr. Rutherford prior to her starting for New York, the witness not being present when such arrangement was made. This was hearsay, and improperly admitted, but as the husband subsequently, of his own knowledge, testified, without objection, to the same arrangement, which is in no way disputed or controverted by other proof, we are at a loss to see wherein the defendant has been prejudiced by the error complained of.

5. Defendant further contends that the court erred in excluding testimony as to other suits having been brought against other newspapers. This objection is unsound. Such evidence was wholly irrelevant and immaterial. It was not even suggested that any other suit was ever brought against any one for the libel counted upon in the action at bar. That other newspapers, which published similar libels, had been prosecuted by the plaintiff for their acts, was a matter with which neither court nor jury had any concern.

6. Equally unsound is the exception to evidence as to who wrote the article complained of. Defendant insists that it was admissible to rebut any presumption of malice. It was conceded, however, that the article was not prepared by the defendant, but came to it regularly, in due course of business, from a reputable news agency, upon which it was in the habit of relying for accuracy, and that it published the article relying upon the source from whence it came; and the court charged that those were circumstances which were "fairly to be taken in mitigation of the act of the defendant," and that the plaintiff had not proved any actual malice or personal ill will on the part of the defendant. Under these circumstances it could have in no way prejudiced defendant that it was prevented from showing the identity of the original liar.

7. The exception as to the exclusion of evidence as to the previous life of the plaintiff was withdrawn upon the argument.

8. The defendant further contends that there was error in the charge to the jury. The law, as laid down by the court, is in substantial accord with the opinion of this court in Morning Journal Ass'n v. Rutherford, 2 C. C. A. 354, 51 Fed. Rep. 513. The particular portions of the charge excepted to are these:

(a) "The law, therefore, as it is frequently said, implies malice."

This was a perfectly correct statement of the law, and was followed by an equally correct statement of the distinction between actual and implied malice, and of the rule of law to be applied, in actions for libel, where no actual malice or personal ill will is shown; and the jury was charged, expressly, that plaintiff had pro-- duced no evidence to show any personal ill will. The exception is therefore unsound.

(b) "As in this case there was no evidence of actual pecuniary loss, she is entitled, unless the evidence in support of mitigation of damage is such as to satisfy you that a substantial amount ought not to be given, to such damages as she sustained in her feelings and her reputation by reason of the publication of the libelous article."

(c) "She, a married woman, was charged positively, in a sensational manner, and in a somewhat jeering manner, with having eloped with a man, her previous intimacy with whom, it was further said, had been freely spoken of in the city of her residence."

(d) "It was a bold, positive, and sensational statement of her disgrace, as a married woman."

(e) "It charged an act of the greatest dishonor to a wife, and one which, if true, is well-nigh remediless."

(f) "It was calculated to cause great injury to her reputation," and was a "most damaging article."

We do not understand that defendant contends that these excerpts from the charge contain any misstatement of the law. He objects to them as being comments on the facts, and calculated to prejudice defendant's case with the jury. It is well-settled law that a court of the United States, in submitting a case to the jury, may express its opinion on the facts. Lovejoy v. U. S., 128 U. S. 171, 9 Sup. Ct. Rep. 57; U. S. v. Philadelphia & R. R. Co., 123 U. S. 113, 8 Sup. Ct. Rep. 77; Simmons v. U. S., 142 U. S. 148, 12 Sup. Ct. Rep. 171. That the comments in this particular case were harsh is manifestly due to the circumstance that the facts in the case were what they were. We do not see in the quotations above any misstatement as to the contents of the libel, any characterization of its terms which its own language did not fully warrant, any comment upon it which was at all unfair. The trial judge might, if he pleased, have refrained from any comment at all; but when, in his discretion, he decided to express an opinion as to the libel, it is not easy to perceive how he could have said much less.

(g) "If you think that the fact that the article was received, in the ordinary course of business, from a reliable and unusually correct news agency, is sufficient to excuse the defendant from the duty of investigation, of inquiry, of delay, for the sake of accuracy, before it published this most damaging article, then you will not give punitive damages."

(h) "If you think * * * that the defendant was guilty of reprehensible negligence in publishing the article without further attempts to verify its truth, then you are justified in giving such a reasonable sum in damages as shall be an example to deter against similar future negligence."

These were perfectly correct statements of the law, (Morning Journal Ass'n v. Rutherford, supra,) and the exceptions taken are unsound.

(i) "As was said in a similar case in this court, it is impossible to arrive, by any arithmetical calculation, at the amount of damages to which she is entitled on this account."

This also was a truthful statement, and the jury being further instructed that they were to compensate for the actual injury caused, and that, while the amount was in their control, the amount given "should be reasonable, and should be just," defendant's exception is clearly unsound.

9. It is further contended that the court erred in refusing to charge defendant's 2d, 3d, 4th, 5th, 8th, 10th, and 11th requests. These may be briefly disposed of:

"Second. There is no proof in this case of any publication of the article complained of in the city of Toronto, Can., the home of the plaintiff.

"Third. The fact that there is no proof of publication of the libel at the home and residence of the plaintiff should be taken into consideration in the fixing of damages."

The court did instruct the jury that "the article ° ° ° was not published in Toronto, and, so far as it is known, there are no people in Toronto who habitually take the paper, and it is not displayed upon the news stands." Why, when the court charged upon the question of publication in Toronto more strongly in favor of defendant than the language of its request asked, counsel nevertheless excepted, and presents such exception here as a ground for reversal, is a mystery which his brief does not elucidate. The fact of nonpublication in Toronto was enumerated in the charge with the other facts which were laid before the jury as bearing upon the question of the measure of plaintiff's damages. That is all the defendant was entitled to.

"Fourth. The only persons who have read the article in question, according to the testimony of the plaintiff's witnesses, have been persons who are intimate friends of the plaintiff, and knew that the charge in said article contained was not true."

In view of the testimony brought out on the cross-examination of the witness Thwaite, it would have been error for the court to have charged in the language of this request.

"Fifth. There has been no evidence in this case tending to show any actual damage to the plaintiff by the publication of the alleged libel."

The court charged that there "was no evidence of actual pecuniary loss." The defendant was not entitled to a charge in the language of the request. When publication of an article libelous per se is proved, and the falsity of its statements shown, the law presumes an injury to reputation and feelings, which is actual damage, even though no special damage be shown. Bergmann v. Jones, 94 N. Y. 51.

"Eighth. It appears from the uncontradicted evidence that the article complained of was received by the Evening Sun from the United Press, a news agency in good standing, which supplies newspapers with items of news, and which regularly supplies the Evening Sun with such items, and that the Evening Sun published the article in question, relying on its authenticity, and the credit to which it was entitled, coming from such a source, and these circumstances should fairly be taken in mitigation."

The court substantially so charged.

"Tenth. The general conduct of the public press has nothing to do with this case.

"Eleventh. Whether a newspaper is published by a corporation or an individual, it matters not."

These abstract propositions are correctly stated, but there is nothing in the record to show that such instructions were so material to a proper consideration of the case by the jury as to make it error in the court to decline to charge them.

10. There is nothing to show that the verdict was, as defendant contends, the "result of passion and prejudice." When the proper rule for the computation of damages has been given to the jury, a verdict cannot be set aside as excessive, in the federal courts, upon a writ of error. Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. Rep. 356; Hogg v. Emerson, 11 How. 587. Nor is a decision upon a motion for a new trial the subject of review in a federal appellate court. Laber v. Cooper, 7 Wall. 565; Railway Co. v. Heck, 102 U. S. 120. The defendant's 18th, 19th, 21st, and 22d assignments of error are therefore unsound.

The judgment of the circuit court is affirmed.