## PALMER v. MATTHEWS et al.

(Supreme Court, Appellate Division, Fourth Department. May 7. 1898.)

WITNESSES—CROSS-EXAMINATION—LIBEL.

    A paragraph of a letter from plaintiff, suing for libel, to defendants, in which he referred to its publication by other papers, and stated that he did not ask one paper to bear all the damages, was called to his attention on cross-examination; and, over objection, he testified that he did not know how many other papers had published the libel, and was then asked how many suits he had brought. *Held,* proper as cross-examination, notwithstanding the answer tended to reduce the amount of recovery.

    Hardin, P. J., and Follett, J., dissenting.

Appeal from trial term, Erie county.

Action by Tyndale Palmer against George E. Matthews and another. There was a verdict giving plaintiff nominal damages, and from a judgment thereon, and from an order denying a motion for a new trial, he appealed. Affirmed.

The defendants are the proprietors of a daily newspaper published in the city of Buffalo, known as the Illustrated Buffalo Express, and on the 2d day of October, 1892, they caused to be published therein an article concerning the plaintiff, of which the following is a copy, viz.:

### "They Stole $440,000.

"Philadelphia, Pa., Oct. 1. The theft of $440,000 from the Auer Incandescent Light Company by Tyndale Palmer, a former Philadelphia newspaper man, in which he was joined by a hotel keeper named Freitas, of Rio Janeiro, has just been brought to light. The company is owned solely by A. O. Granger, the president, and Ex-Senator Gazzam, the vice president. They formed the South American Welsbach Incandescent Light Company, and sent young Palmer to Rio to boom the invention. He and Freitas sold the patent rights for $510,000 in gold, and upon Palmer's return he reported the sale as having been made for $80,000, of which $10,000 was expended in his salary, expenses, and commission. The theft was not learned until two other men were sent to Brazil on a second mission, although reports had reached the ears of the company. Palmer was sent to England to negotiate securities of one of Ex-Senator Gazzam's iron companies, and, upon demanding a higher commission, was dismissed. Palmer cannot be returned from England, but action is being taken to recover sums which he expended in buying farms for relatives. The second trip was made to Brazil to 'sell improvements on the original Welsbach invention, which caused the title to be changed to the Auer Company.'"

The publication of this article was admitted by the defendants in their answer, but they alleged, by way of mitigation, that the same was furnished to them by an association known as the United Press Association, which was engaged in the business of collecting and trans-

mitting news by telegraph to its subscribers and patrons; that they received the article in the regular course of business, and, in common with many other newspapers throughout the country, published the same in good faith, and in reliance upon its accuracy and truth.     The issues thus joined were tried at the Erie trial term, and the trial resulted in a verdict for six cents damages in favor of the plaintiff. From the judgment entered thereon, as well as from an order denying the plaintiff's motion for a new trial on the minutes, this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Tyndale Palmer, in pro. per.
Charles B. Wheeler, for respondents.

ADAMS, J.     Several exceptions to the rulings of the trial court are pressed upon our attention by the plaintiff, who appeared in person upon the argument of this appeal, and it is claimed that they present error which requires a reversal of the judgment and order appealed from.     But, after careful examination of the same, we find ourselves unable to acquiesce in this contention.     To our view, the most serious question which the case presents is that raised by exceptions to certain inquiries put to the plaintiff, upon his cross-examination, relative to similar actions brought by him against other newspapers for the publication of this identical article.     It appears that before the present action was commenced the plaintiff demanded of the defendants that they retract the alleged libel, and compensate him for the injury which he claimed to have sustained in consequence of its publication.     This demand was in the form of a letter, which was followed by several other letters written by the plaintiff and sent to the defendants, in one of which, under date of July 7, 1894, were inclosed some clippings from other newspapers, and in regard to which the plaintiff wrote as follows, viz.:

"I am prepared to demonstrate to you, as I already have done to the counsel of the papers which I inclose, that the charges made were absolutely baseless, and that, in addition to the ordinary injuries always arising from such false and infamous charges, my business interests received a direct injury from your publication.     The financial loss to me from the publication, as a whole, was most serious.     However, I do not expect any one paper to bear it all, but only its due proportion.   *   *   *"

This letter was offered by the defendants and received in evidence without objection during the plaintiff's cross-examination, and it was followed by inquiries to which we have already adverted, and which simply called for a statement as to the number of papers he had brought actions against for publishing this same article. The plaintiff bases his contention that the admission of this class of evidence was error, upon the assumption that it was received by way of mitigation.     In this, however, he is clearly mistaken; for the learned trial court was particular to say that it was admitted only by way of cross-examination, and in his charge to the jury neither this nor any other circumstance, save the absence of express malice, and the source from which the defendants received the article, was

alluded to as mitigating in its character. The sole question, there-fore, as we regard it, is, was the evidence thus objected to properly received in connection with the cross-examination of the plaintiff? Subject to certain well-defined limitations, the range and extent of a cross-examination are generally within the discretion of the trial judge, and a court of review ought not to interfere unless it is made to appear that this discretionary power has been abused. Foster v. Tanenbaum, 2 App. Div. 168, 37 N. Y. Supp. 722; People v. Casey, 72 N. Y. 393. That the record in this case does not dis-close any such abuse of power is, we think, perfectly apparent. In one of the letters written by the plaintiff under date of November 30, 1893, and which was introduced in evidence by him, he alludes to the fact that other papers had published the libel, and claimed that it in no wise affected his right of action against the defendants. In the subsequent letter of July 7, 1894, he not only incloses clippings from some of those papers, but informs the defendants that all he asks of them is that they shall bear their due proportion of the pecuniary compensation he was seeking to obtain through the medium of his various actions. This last-mentioned letter was one of a series of five written by the plaintiff to the defendants, four of which he had already read in evidence. In these circumstances, we think it was entirely proper for the defendants to complete the series by introducing the one which had been omitted, and, having done that, to cross-examine the plaintiff respecting its contents. In pursuing this course the plaintiff's attention was directed to the statement in his letter that this particular article had been published by other papers; and, upon his conceding that such was the fact, he was asked how many papers had published it, to which he replied that he did not know. Up to this point, there certainly can be no doubt as to the propriety of the questions put to the plaintiff; and, had he answered the last one, it would perhaps have been all that the defendants were entitled to. But, inasmuch as he disclaimed any knowledge upon the subject of the inquiry, we are unable to see why it was not perfectly ligitimate for counsel to pursue it, and, in order to refresh the recollection of the witness, ask him how many papers he had brought actions against. The answer to this question furnished some information as to the number of papers which had published the article, and while it may, as is claimed, have had a tendency to reduce the amount of the plaintiff's recovery, that circumstance does not make its reception error, provided it was competent for any purpose. As has been well said by an eminent jurist, "A party who seeks to testify in his own behalf must take the risk, if there are vulnerable joints in his harness." People v. Court of Oyer and Terminer of New York Co., 83 N. Y. 461. One of the principal objects of a cross-examination is to expose these "vulnerable joints," and it matters not whether they are the result of defective character, contradictory statements, or declarations against interest; their discovery is one of the risks which a party assumes when he takes the stand as a witness in his own behalf. As has been already intimated, this is the only question which we deem it necessary to discuss; and as it, to our mind, presents no error, our

conclusion is that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur, except HARDIN, P. J., and FOLLETT, J., dissenting.

---

In October, 1892, the defendants were owners, proprietors, and publishers of a daily newspaper known as the Illustrated Buffalo Express, which was published in the city of Buffalo, and had a large circulation there, and in other parts of the state. Plaintiff's complaint alleges that on the 2d of October, 1892, the defendants published in their said newspaper a certain article, "in which the defendants did falsely, wickedly, and maliciously publish, and cause and procure to be published, of and concerning the plaintiff, the false, scandalous, and defamatory words or matter" particularly set out in the complaint. The plaintiff avers that the said article, in so far as it stated or insinuated that the plaintiff "has been or was guilty of any theft or other crime or offense, or of any infamous or disgraceful act, either alone or in conjunction with any other person, or that he had sold the patent rights of the American Welsbach Incandescent Light Company or the Auer Incandescent Light Company for $510,000, or for any sum other than the sum reported and accounted for by him to said Welsbach Company, to wit, the sum of $80,000, or that he was a fugitive from justice, or that he had embezzled any proceeds of said sale, or any moneys belonging to his employers or to any one else, or had improperly expended such proceeds or moneys in buying farms for relatives or otherwise, were and are utterly false, malicious, and defamatory; and plaintiff avers that he was never guilty of any of the infamous and disgraceful acts that are stated or insinuated in said article." The complaint alleges that the printing and publishing of the article has injured his good name and reputation, to his damage in the sum of $25,000. There is no averment in the complaint of special damages. The answer of the defendants admits that they are the owners, proprietors, and publishers of the newspaper stated in the complaint, and that on the 2d day of October, 1892, there was published in one edition only of the said Illustrated Buffalo Express the article set forth in the complaint. By way of mitigation of damages, the answer alleges that the defendants were subscribers to, and patrons of, the United Press, which was an association organized and existing and engaged in the collection and transmission to its patrons, and to newspapers generally throughout the United States, of the general news of the whole world. The answer also avers "that on or about the said 2d day of October, 1892, the said United Press did transmit and deliver to the editors of the defendants' paper the article or dispatch set forth in said complaint; that said dispatch was furnished and received by said editors in the regular course of business, in common with other telegraphic news; that said editors, believing in and relying upon the truth of the statements contained in said dispatch, and without any malice on their part or on the part of any one connected with said paper, did in good faith publish the same, in common with very many other newspapers throughout the country; that said article was published in good faith, without any malice on the part of these defendants, or on the part of any of their editors or employés, towards the plaintiff, but in the belief of the truth of the same; that prior to the publication of the said article complained of by the said plaintiff, the same article, or articles containing the substance thereof, had been and were published by many other newspapers throughout the United States, and in the community and parts of the country where said plaintiff was known." The answer contains no other matter by way of defense, or in mitigation.

HARDIN, P. J. (dissenting). Plaintiff was sworn as a witness in his own behalf, and produced and read in evidence a letter which had been written to the defendants bearing date in November, 1892, which, when read in evidence, was marked as "Exhibit A." He testified that he wrote another letter to the defendants, bearing date

.November 30, 1893, which was read in evidence, and marked "Exhibit C." He also testified that he wrote to the defendants another letter, bearing date November 4, 1894, which was read in evidence, and marked "Exhibit D." He further testified that on April 19, 1894, he addressed to the defendants another letter, which was read in evidence, and marked "Exhibit E," and he testified that he received no answer to that letter from the defendants, and that the defendants had never made any retraction of the charge, to the knowledge of the plaintiff. During the course of the cross-examination of the plaintiff, he was shown another letter written by him to the defendants, which was dated, "Washington, Iowa, 7–17–94." Among other things contained in that letter were the following words:

"The financial loss to me from the publication, as a whole, was most serious. However, I do not expect any one paper to bear it all, but only its due proportion. Just and reasonable reparation, coupled with broad and unequivocal retraction, is the only basis of settlement upon which I can meet any paper. Neither one nor the other has been, can be, or will be accepted alone."

The cross-examination continued at great length. After considerable discussion between the counsel of the respective parties and the court, the following appears in the record:

"Plaintiff's Counsel: We contend here that the fact that somebody else may have—although the fact does not appear here—published this same libel, or a similar one, is not competent evidence. (Question read by the stenographer, as follows: 'Had you read it elsewhere before?') Now, within the rule, it is no part of the cross-examination,—it is not admissible,—unless it is shown that they had notice or knowledge of any previous publication. I think that is not pleaded. Defendants' Counsel: Yes. Plaintiff's Counsel: Well, it may be. I object to it certainly as not part of the cross-examination; and it should be followed, if it can be, by proof. Then the witness may be examined, perhaps, about it, if the evidence is admitted. But here and now, without further discussing the main question of its admissibility, I submit it is not competent, and not admissi-.ble. The Court: Well, Mr. Wheeler, you may pass it for the present."

The cross-examination continued, and the following occurred:

"Q. And you wrote in your letter to Mr. Matthews, did you not: 'The financial loss to me from the publication, as a whole, was most serious. However, I do not expect any one paper to bear it all, but only its due proportion'? You said that to Mr. Matthews, did you not? A. The letter speaks for itself. Q. Then you did recognize the fact, did you not, that this particular article in question had been published by a large number of other papers? Plaintiff's Counsel: That I object to. The Court: He may answer. Plaintiff's Counsel: Please note the exceptions on the grounds as before,—that it is not admissible in mitigation, or for any other purpose. The Court: I think that it is a proper cross-examination as to this letter. A. The letter says so. Q. Well, what is the fact? A. The letter states the fact. Q. The letter states the truth,—that it had been published. I ask you if you did not know the fact that it had been published by a large number of other papers throughout the country? A. I did. Plaintiff's Counsel: That I object to, the same as before. The Court: Yes; you may have the exception. Q. How many had published it? A. I do not know. Q. How many had you brought suit against, at least? Plaintiff's Counsel: That I object to, as before. The Court: He may answer. Plaintiff's Counsel: Your honor said it was proper cross-examination of this letter. That letter was introduced by the defendant. The Court: This witness is the party himself, and the matter of the order of proof is not of note. Plaintiff's Counsel: You will ·note an exception. Q. How many had you brought suit against for its publication? A. I could not say, but I think I may give you an idea in this way. Q. ·Give us the best statement you can make. * * * Q. In that action did you

testify that you had brought suit against 152 or thereabouts? Plaintiff's Coun-
sel: I object as not competent as to the bringing of suits, and same as before.
(Received, and exception taken.) A. I did not. Q. Is it not a fact, Mr. Palmer,
that you have brought suits against about 150? A. It is not. I do not person-
ally know Mr. Matthews, the defendant here, nor Mr. Austin, his partner in
business."

The fact that the plaintiff had brought suits against other parties
was not relative or material to the issue formed by the pleadings.
Nor was it necessary to shed light upon the direct examination.
Nor did it tend to impair the credibility of the witness, or impeach
any portion of the evidence given by him in chief. Nor do we
think the fact that the defendants had put in evidence a letter from
which the quotation is made warranted the cross-examination, to
the extent it was allowed to be carried. In Witcher v. Jones (Com.
Pl.) 17 N. Y. Supp. 491, it was held, viz.:

"In an action for libel, where exemplary damages are demanded, it is com-
petent to prove, in mitigation, previous publications of the libelous matter by
others, known to defendant at the time of his publications, and relied upon by
him as authority. But evidence of contemporaneous publications by others does
not tend to disprove malice, and is inadmissible."

In the course of the opinion delivered in that case, Pryor, J., said:

"If, therefore, the defendant uttered the libel, in good faith, upon the authority
of others, that circumstance manifestly tends to disprove a malicious motive in
the publication; and, accordingly, in mitigation of damages the defendant may
always show other publications, known to him at the time of his repetition of
the defamatory matter. But obviously his motive in the publication could not
have been affected by a fact of which he was then ignorant, and hence the
palpable absurdity of admitting such fact in disproof of malice;" citing Hatfield
v. Lasher, 81 N. Y. 246; Willover v. Hill, 72 N. Y. 36; Morey v. Association,
123 N. Y. 207, 25 N. E. 161.

In Van Ingen v. Publishing Co. (Com. Pl.) 35 N. Y. Supp. 842, the
court was requested to charge:

"That the fact that the same matter, substantially, was published extensively
in the morning papers of the same day is to be considered by the jury in
mitigation of damages."

The court refused to make such charge, and it was held that no
error was committed.

In Folwell v. Journal Co., 37 Atl. 6, the supreme court of Rhode
Island said:

"The defendant's offer to show that the same article was published by other
papers on the same day, for which other suits had been brought, was properly
refused. The acts of other publishers are independent acts, which could in no
way affect the defendant."

In Smith v. Association, 5 C. C. A. 91, 55 Fed. 240, it was said:

"Defendant contends that the court erred in excluding testimony as to other
suits having been brought against other newspapers. This objection is unsound.
Such evidence was wholly irrelevant and immaterial. * * * That other news-
papers which published similar libels had been prosecuted by the plaintiff for
their acts was a matter with which neither court nor jury had any concern."

The doctrine of that case seems to have been followed in Bennett
v. Salisbury, 24 C. C. A. 329, 78 Fed. 769.

It is contended by the learned counsel for the respondents that
the cross-examination for the purpose of showing how many other

publications had been made, and how many suits had been brought by reason thereof by the plaintiff, was proper, "to show the kind of a man the plaintiff is, by showing the attitude which he has assumed touching the subject-matter of the libel in question." We think there is no force in that view of the matter. The fact that numerous other parties had libeled the plaintiff, and that he had sought retractions from the several wrongs thus perpetrated upon him, did not tend in any way to impeach his general character, or to mitigate the offense of the defendants in publishing the article mentioned in the complaint. As was said by Kent, C. J., in Tillotson v. Cheetham, 3 Johns. 61:

"The plaintiff is entitled to his strict compensation for every injury. A satisfaction for one tort is no satisfaction for another."

Such was the rule in England (Saunders v. Mills, 6 Bing. 213; Id., 3 Moore & P. 520) until 1888, when it was changed by the sixth section of chapter 64, 51 & 52 Vict., which provides:

"Sec. 6. At the trial of an action for a libel contained in any newspaper the defendant shall be at liberty to give in evidence in mitigation of damages that the plaintiff has already recovered (or has brought actions for) damages or has received or agreed to receive compensation in respect of a libel or libels to the same purport or effect as the libel for which such action has been brought."

The respondents' learned counsel calls our attention to People v. Court of Oyer and Terminer of New York Co., 83 N. Y. 460, and claims that it is an authority justifying the extent to which the cross-examination was allowed. In the course of the opinion delivered in that case, it was said:

"As a general rule, the range and extent of such an examination is within the discretion of the trial judge,—subject, however, to the limitation that it must relate to matters pertinent to the issue, or to specific facts which tend to discredit the witness, or impeach his moral character."

It is difficult to see that the circumstance that several other newspapers had published a libel of the plaintiff tended to discredit him, or to impeach his moral character.

From an inspection of the record, and especially upon a consideration of the amount of the verdict,—six cents,—we are not able to say that the extent to which the cross-examination was allowed in respect to the matters which we have already alluded to, did not work injury to the plaintiff. In Matson v. Buck, 5 Cow. 500, it was said that a nominal verdict is "equivalent to a verdict for the defendant," and in Gilman v. Lowell, 8 Wend. 573, it was said that a nominal verdict "is about equal to a verdict against him"; and in Sanderson v. Caldwell, 45 N. Y. 398, it was said that a nominal verdict, where the plaintiff's character remains unimpeached, is a total denial of justice, since it, in effect, says that, though the charges were untrue, the plaintiff had no character to lose. The same doctrine was stated by Macomber, J., in Griebel v. Printing Co., 60 Hun, 319–322, 14 N. Y. Supp. 848. An inspection of the evidence found in the record renders it difficult to understand why the jury reached the conclusion that only nominal damages should be given, and that the plaintiff should not receive at its hands substantial damages. We are of the opinion that the order denying

the motion for a new trial, and the judgment entered upon the
verdict, should be reversed.

Judgment and order reversed, and a new trial ordered, with costs
to the appellant to abide the event.

FOLLETT, J., concurs in this opinion.