### MANN et al. v. DEMPSTER.

(Circuit Court of Appeals, Second Circuit. June 30, 1910.)

#### No. 234.

1. LIBEL AND SLANDER (§ 105*)—EVIDENCE—ASSOCIATED PARAGRAPHS.

Where a paragraph sued on as libel by innuendo referred to plaintiff by his Christian name and commenced "In this connection," the preceding paragraph, separated from the other by a line, in which his full name was given, was admissible.

[Ed. Note.—For other cases, see Libel and Slander; Cent. Dig. §§ 282–294; Dec. Dig. § 105.*]

2. LIBEL AND SLANDER (§§ 104, 105*)—EVIDENCE—ARTICLE AS WHOLE.

Where a newspaper article contains words which may be libelous by innuendo, plaintiff is entitled to put the entire article in evidence for consideration of the innuendo, and the question whether there was express malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 284–294; Dec. Dig. §§ 104, 105.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. LIBEL AND SLANDER (§ 4*)—"EXPRESS MALICE."

"Express malice" in libel is wanton and reckless disregard of the rights of others.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 111; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 3, pp. 2607–2611; vol. 8, p. 7658.]

4. APPEAL AND ERROR (§ 231*)—REVIEW—EVIDENCE—INSUFFICIENT RESERVATION OF EXCEPTION.

An objection to expunging matter from a paragraph admitted in evidence over objection cannot be reviewed where objector did not ask to have that matter read.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 231.*]

5. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Any error against defendant in libel in expunging matter from a paragraph admitted in evidence was harmless, where the matter contained allusions which would have tended to inflame the jury against him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

6. LIBEL AND SLANDER (§ 101*)—FALSITY OF STATEMENT—BURDEN OF PROOF.

Plaintiff need not prove the falsity of libel; it being for defendant to justify by showing truth of the statement.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 273–280; Dec. Dig. § 101.*]

7. LIBEL AND SLANDER (§ 120*)—PUNITIVE DAMAGES—PROOF REQUIRED.

The mere fact of libel does not authorize recovery in excess of compensatory damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 350, 351; Dec. Dig. § 120.*]

8. TRIAL (§ 25*)—RIGHT TO OPEN AND CLOSE.

An admission in a federal Circuit Court by defendants in libel of diverse citizenship that they published the article of plaintiff, and it was widely circulated, did not give them the right to open and close, where issues remained whether there was express malice.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 44–75; Dec. Dig. § 25.*]

9. LIBEL AND SLANDER (§ 123*)—JURY QUESTIONS.

Whether defendants in newspaper libel intended to charge by innuendo that plaintiff had with an immoral motive bought a house to cover an immoral relationship *held*, under the evidence, a jury question.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

10. APPEAL AND ERROR (§ 1004*)—REVIEW—EXCESSIVENESS OF VERDICT.

The size of a verdict for plaintiff in libel is not reviewable in a Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

11. APPEAL AND ERROR (§ 1078*)—ASSIGNMENTS OF ERROR—WAIVER.

Assignments of error not discussed in plaintiff in error's brief need not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4256–4261; Dec. Dig. § 1078.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

12. New Trial (§ 117*)—Motion—Time for Moving.
    A trial judge cannot set aside a verdict and judgment and grant a new trial where the trial term has long since expired, and has not been extended by order.
    [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 238–241; Dec. Dig. § 117.*]

13. Trial (§ 273*)—Instructions—Objections—Time.
    Exceptions to instructions reserved after the jury retired cannot be reviewed, though the adversary assents.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 680–682; Dec. Dig. § 273.*]

    Noyes, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Samuel Dempster against William D'Alton Mann and another. Judgment for plaintiff and defendants bring error, and move to remand. Judgment affirmed. Motion overruled.

See, also, 157 Fed. 319.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, for $20,080.75, entered May 13, 1909, in favor of defendant in error who was plaintiff below. The action was for libel, the jury gave a verdict against defendants for $40,000, but the trial judge as a condition of denying motion for a new trial required plaintiff to reduce recovery to $20,000.

When the cause was reached and argument begun, we took it under advisement on a point of practice, which will be found disposed of in opinions filed April 26, 1910. 179 Fed. 837. Before final argument plaintiffs in error made a motion that the cause be remanded to the Circuit Court for further action.

Wray & Callaghan (Albert A. Wray, Stephen Callaghan, and Nelson L. Keach, of counsel), for plaintiffs in error.

C. O. Maas, for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The motion to remand may be more conveniently considered after the cause has been discussed on the merits. The defendant Mann is the publisher of a weekly paper called Town Topics, issued in New York, which has concededly a large circulation here and in Pittsburgh, where the plaintiff resides.

On March 28, 1907, there was published in the paper the following paragraph, of which plaintiff complained:

"In this connection it is interesting to note that some time ago Samuel bought a handsome house in Craig street, and there installed a big voluptuous-looking lady whose ostensible occupation is trimming hats, an occupation made particularly lucrative through her intimacy with the Dempsters, an intimacy which must be very warm, since she was one of the few outsiders at Will's very small private funeral."

This particular paragraph was preceded by another, the two being separated by a line, both paragraphs referring apparently to the same individual. It is quite apparent that the last paragraph standing alone

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in no way indicates who the individual is that is referred to as "Samuel." Plaintiff set out the entire article in the complaint, although he charged intent to libel only by the publication of the paragraph above quoted. Upon the trial defendants moved to strike out from the complaint all of the paragraph above the line, and objected to the introduction in evidence of the article as a whole.

The court expunged several passages from the first paragraph; i. e., he did not allow plaintiff to read them to the jury. So much of the paragraph as was admitted reads as follows:

"Not so many years ago the W. W. O'Neill was the largest of the ungainly, stern-wheel towboats plying on Western waters between the coal fields of the Pittsburgh district, down the Ohio and Mississippi to Southern coal ports, and the golden returns she brought were plentiful enough to generously reward those whose venture she was. The big boat is still in the business, but the man for whom she was named, Captain W. W. O'Neill, one of the old-time steamboat men and coal operators, has been dead these, many years. He lived long enough, however, to see a family of dark-haired, Junoesque daughters ripen to a stage where their looks and his money made them good catches. When the last named, Lou, was married to Will Dempster, son of Alex. Dempster, one of the good old pillars of Pittsburgh, her prospects were considered the best of all the O'Neill girls. But last November Will died. It was on the bounty of the father that the son's widow and child found themselves thrown. They had reason to expect much, for the name of Dempster was synonymous with deeds of charity and philanthropy. But the widow had not taken into account her brother-in-law, Samuel."

Defendant contends that it was error to read this to the jury because "it tended to inflame and prejudice the minds of the jurors against defendants." The two paragraphs are both parts of the same article. The one below the line begins with the words "In this connection." Defendants before the reading admitted that by "Samuel" in the second paragraph "Samuel Dempster, the plaintiff, was intended," and now insist that, in view of that concession, it was error to admit the first paragraph. We do not so think. Where an article of this sort contains words which by innuendo may be held libelous, the plaintiff is entitled to put the entire article in evidence. It affords a side light for the jury when considering the innuendo and also the question whether or not there was any express malice, as the law defines that term, viz., "wanton and reckless disregard of the rights of others."

Defendants also now insist that it was error to expunge anything from the first paragraph before allowing it to be read to the jury. We do not find any exception on which to base such an argument. Defendants' counsel excepted to any part of the first paragraph being read. When his objection was overruled and the parts admitted were read, he did not ask to have the omitted passages also read. But, if it were error to omit them of which error he could here complain, the error was not harmful because the omitted passages contain merely some unkind allusions to the experiences of the "dark-haired Junoesque daughters," one of the allusions coming perilously near to an insinuation of unchastity. The jury would be more likely to become "inflamed" if they were in than if they were out.

The next proposition advanced by the defendants is that they were entitled to open and close. Leaving out all questions arising upon the

defenses affirmatively pleaded, the issues presented when the jury was impaneled were these:

(1) Whether or not plaintiff was a citizen of Pennsylvania.

(2) Whether or not defendants published the article in Town Topics, and widely circulated the same in New York, Pittsburgh, and elsewhere.

(3) Whether or not the statements in the article were published concerning the plaintiff.

(4) Whether or not they were false.

(5) Whether or not defendant made any effort to communicate with plaintiff prior to publication.

(6) Whether or not prior to publication defendants made any effort to verify the truth of the article.

(7) Whether or not the statements were made recklessly and maliciously.

(8) Whether or not the statements were made with the intent to convey to the public the impression charged in the innuendo.

If a published statement is libelous, plaintiff need not prove its falsity. It is for defendant to justify by showing the statement to be true. As to No. 4 plaintiff did not have the burden of proof. Nos. 5, 6, and 7 deal with the question of damages—whether or not there was such express malice as would sustain a claim for more than the compensatory damages to which plaintiff would be entitled if the libel were not justified. If plaintiff seeks to recover more than compensatory damages, he must show more than the mere fact that a libel was published. At the opening of the trial defendants conceded the affirmative of propositions 1, 2, and 3, but such concession did not give them the right to open and close on the whole case.

The proposition mainly relied upon by defendants is that "the printed matter was not libelous per se or libelous at all." The complaint averred that by innuendo defendants intended to and did charge and convey to the public an impression that plaintiff had with an immoral motive bought and paid for the house in Craig street, and installed therein the lady referred to, whose occupation of trimming hats was ostensible merely, and was a shield and cover to an "illegal and illicit and immoral relationship with plaintiff."

The paragraph complained of consists of a number of separate assertions, each of which, standing by itself, is perfectly innocent. Even the statement that the occupant of the house was "a big, voluptuous looking lady" is not libelous, though it may be impertinent and might tend to a breach of the peace on the part of her male relatives. But words perfectly innocent when standing by themselves may be thrown into such juxtaposition as to become libelous. To effect such a collocation is a common device of experienced paragraphers of personal gossip. When haled into court they are usually vociferous in asserting that no libelous statement can be found in the article, and frequently seek to becloud the case by introducing much testimony to establish the truth of the several separate statements, insisting that they have thus "justified" the publication. Thus one may publish of an

individual: "This is the same John Smith who got himself into serious trouble when he was in Arizona three years ago. Horse stealing is not popular in that community." He may safely assume that any court will take judicial notice of the fact that horse stealing is not popular in Arizona or even elsewhere. He may be able to prove that, when John Smith was in Arizona at the time stated, he insisted on riding a half-broken horse, was thrown in an infrequented part of an alkali desert, broke his leg, and lay there two days before he was rescued. But ability to prove the occurrence of such serious trouble would be no justification of the statement which the article by indirection conveyed, that John Smith when in Arizona was discovered to be a horse thief. So in the case at bar we have an ingenious collocation of innocent assertions which is certainly well calculated to convey the impression charged in the complaint. Whether or not it was intended to convey such impression was a question for the jury, but we should certainly have a poor opinion of the intelligence of 12 men, who might reach the conclusion that the paragraph was constructed with an innocent intent. If no more was intended than a publication of the various innocent statements as to the purchase of a house, the trimming of hats, and the attendance of some obscure person at a private funeral, why would space be given to such uninteresting details in the columns of the paper? It is difficult to escape the conviction that the paragraph found a place in Town Topics only because the innocent assertions were so skillfully put together as to make the article a spicy bit of gossip In this case as in our illustrative example, the evidence adduced in justification was confined to the innocent statements, such as the purchase of the house, etc. There is not a scintilla of evidence tending to show the existence of immoral or illicit relations. Moreover, it appears that the paragraph was published without the slightest effort on the part of defendants or their subordinates to make any investigation as to the existence of such relations.

It is further argued that the verdict is excessive, but it is well settled that the size of the verdict is not a subject of review in this court. There are various other assignments of error, which have all been examined. Since they have not been discussed in the brief, they need not be here rehearsed. We find in them no ground for reversal.

The preliminary motion may now be considered. The relief asked for was to remand the cause to the Circuit Court, to authorize and empower plaintiffs in error to make an application to the trial judge to set aside the judgment and the verdict and grant a new trial. Since the term at which the cause was tried has long since expired and has not been extended by order, the trial judge would have no power to grant such relief, if the cause were remanded. This is sufficient ground for denying the motion. The application was made because in our former decision it was held that exceptions to the charge reserved after the jury had retired could not be considered. Counsel for the plaintiff while opposing the motion, expresses his willingness to have these exceptions considered. This, for reasons given in our former opinion, cannot be done. A majority of the court, however, in order to satisfy

defendants that errors in practice have not deprived them of any substantial rights, have added a footnote to this opinion.[1]

The judgment of the circuit court is affirmed.

NOYES, Circuit Judge (dissenting). For reasons stated in my opinion of April 26, 1910 (179 Fed. 839), I think that the action of the trial court in depriving the plaintiffs in error of the right to take lawful exceptions to the charge constituted error calling for the reversal of the judgment, and calling for such reversal none the less whether we think the plaintiffs in error would have been able to take meritorious exceptions or not.

But, if the judgment is not to be reversed upon this ground, I agree that the plaintiffs in error can have no other relief. The exceptions which they were able to take disclose no prejudicial error, and the trial judge would have no right to set aside the judgment if the cause should be remanded.

---

[1] The exceptions to the charge, which were dictated to the stenographer after the jury retired, were three in number.

(1) That the trial judge said: "I have no hestitation in saying for myself as a man (I hope of common sense and some experience) that the words do mean what the plaintiff says they mean." He also charged: "It is for you to say whether that is the meaning of those words, and I say again that that is entirely for you, and you can find anything your consciences dictate on that subject."

Reference may be had to the opinion of this court in Smith v. Sun Printing & Pub. Ass'n, 55 Fed. 246, 5 C. C. A. 91.

(2) That the trial judge said: "And I say, also, that, in my opinion, the defense of justification in this case has not been supported, but that also is for you to say, yet I have a right to express my own opinion, and I do so."

The judge had already charged: "He who alleges the truth of the matter must make his proof of the truth as broad as is the defamation. It will not do to pick out here a word and there a word and say these words are true and prove they are true. He must prove them as an entirety, and show that the alleged libel, as reasonably interpreted, is true. Unless, therefore, you as reasonable men are of the opinion that these words in their entirety and true meaning are true, as written and published, the defense of justification fails."

Reference may be had to the opinion supra as to proof offered in justification.

(3) That the charge "in words or in substance charges the jury that the reckless and careless publication as was shown in this case was sufficient evidence from which the jury might find malice."

No such statement is found in the charge.

What the trial judge said on this branch of the case was: "But, even where no actual malice is shown, exemplary damages may be given where there is proof of such wanton disregard or reckless indifference to the rights of others as is equivalent to the reckless violation of such rights. It is asserted here that the publication of what is claimed to be a libelous statement upon the plaintiff, without any other investigation than is shown to have been made in this case, is so careless as to amount to that reckless indifference or wanton disregard of the rights of others. If such carelessness existed, I advise you, then, you are at liberty to award punitive or exemplary damages."