## WITCHER *v.* JONES.

*(Common Pleas of New York City and County, General Term.　February 1, 1892.)*

**1. ACTION FOR LIBEL—EVIDENCE.**

The issue of a newspaper containing an alleged libelous article, and its production in court, prove the publication; and the connection of the defendant association with the newspaper may be established, *prima facie,* by identity of name, control, and locality of office.

**2. SAME—MITIGATION OF DAMAGES—MALICE.**

Evidence of contemporaneous publication of a libel by others, of which defendant was ignorant at the time of the publication complained of, is not admissible in mitigation of damages or in disproof of malice.

**3. SAME—DEFAMATORY WORDS—QUESTION FOR JURY.**

A charge that plaintiff "joined the Mormons, and at one time had a good deal of influence in church matters at Salt Lake," is capable of a defamatory construction, and it is not error to submit to the jury the question whether such charge is libelous. *Holmes* v. *Jones,* 24 N. E. Rep. 701, 121 N. Y. 461, distinguished.

Appeal from trial term.

Action by Vincent A. Witcher against Gilbert E. Jones, as treasurer of the New York Times, for libel. Verdict and judgment for plaintiff. Defendant appeals from the judgment, and order denying a motion for a new trial. Affirmed.

For report of decision on appeal from order vacating an order for plaintiff's examination before trial, see 5 N. Y. Supp. 917.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

*Townsend, Dyett & Einstein,* (*B. F. Einstein,* of counsel,) for appellant. *Howard R. Bayne,* (*Saml. B. Paul,* of counsel,) for respondent.

PRYOR, J. For reversal of the judgment, appellant relies on three grounds: (1) Insufficient proof of publication by the defendant company. The issue of the newspaper containing the article, and its production in court, constituted complete proof of publication; and, by identity of name, control, and locality of office, a *prima facie* connection of the company with the newspaper and publication by the company, were so shown as to require contradictory evidence from the defendant. As the defendant had peculiar means of repelling the proof of publication, and neglected so to do, we must accept the fact as satisfactorily established. *Wylde* v. *Railroad Co.,* 53 N. Y. 156; *Stearns* v. *Field,* 10 N. Y. 640. (2) Refusal of the court to admit evidence of other contemporaneous publication of the libel. The contention is that such contemporaneous publication was competent in mitigation of damages. In an action for defamation, two classes of fact are pleadable and provable in mitigation of damages: *First,* such as impeach the character of the plaintiff; *secondly,* such as tend to negative the malicious motive of the defendant. As to the first, since the plaintiff sues for loss of character, and since the amount of that loss depends upon the value of the character, it is a self-evident proposition that the defendant's previous knowledge of that character is an altogether irrelevant circumstance. As to the second kind of proof, the case is obviously otherwise. In the absence of privilege the law conclusively implies malice, *i. e.,* want of legal justification, in the publication of

an actionable libel; and, in any event, the plaintiff is entitled to full compensation for his injury. But when, beyond mere indemnity, the plaintiff seeks to recover exemplary damages, the fact of actual malice in the publication becomes a relevant and material consideration. Hence, in defeat or mitigation of exemplary damages the defendant may introduce any evidence of which the legitimate tendency is to show that he was not actuated by a wanton or malicious motive; as, for instance, that the libel was uttered negligently or against his will, or in belief of the apparent truth of the defamatory charge. If, therefore, the defendant uttered the libel in good faith upon the authority of others, that circumstance manifestly tends to disprove a malicious motive in the publication, and accordingly, in mitigation of damages, the defendant may always show other publications known to him at the time of his repetition of the defamatory matter. But, obviously, his motive in the publication could not have been affected by a fact of which he was then ignorant; and hence the palpable absurdity of admitting such fact in disproof of malice. *Hatfield* v. *Lasher,* 81 N. Y. 246; *Willover* v. *Hill,* 72 N. Y. 36; *Morey* v. *Association,* 123 N. Y. 207, 25 N. E. Rep. 161. (3) Refusal of the court to withdraw one of the alleged libelous charges from the consideration of the jury. To appreciate the force of appellant's contention upon this point, it is requisite to read the entire libel, as follows: "*Lynched for Wife Murder.* Wheeling, West Va., March 5th. A special to the Register from Credo, Wayne county, says a report has just reached there from across the Virginia line that Col. A. V. Witcher, well known throughout the lower end of the state as a politician and orator, has been lynched by a mob for the murder of his wife. No details of the crime are given, but the story is plausible, when taken in connection with facts known in Wayne county at just about the outbreak of the war. When hostilities began, he entered the Confederate service, and rose to the rank of colonel. When his time expired, he commanded a volunteer regiment of guerrillas on the Virginia and Kentucky border. The war ended, he went to Utah, where he joined the Mormons, and at one time had a good deal of influence in church matters at Salt Lake. He returned to West Virginia about six years ago. He has been married five times, the last marriage being a match not after the colonel's choosing. The report has created much excitement in Wayne county." On the trial the plaintiff contended that, besides its general defamatory tenor, the article contained five distinct libelous charges, namely, that plaintiff was lynched, that he murdered his wife, that he was a guerrilla during the war, that he was a Mormon, and that he was compelled to marry his present wife. As to the Mormon matter, defendant requested the court to rule that it was not libelous *per se,* and to withdraw it from the jury. The request to withdraw was refused; but the court charged: "If that language is ambiguous, or if the jury find that it imputes a criminal offense, such as that he was engaged in polygamy, then it is libelous; but, if not, it is not libelous." Upon these rulings the appellant alleges error—*First,* in refusing to withdraw the charge from the jury; and, *secondly,* in submitting the meaning of the charge to the jury. As to appellant's first proposition, it by no means follows. from the authority he cites—*Holmes* v. *Jones,* 121 N. Y. 461, 24 N. E. Rep. 701—that, if the charge be not *prima facie* libelous, it must be withdrawn from the jury. The point there adjudicated was that a distinct libel, disproved by conclusive and uncontradicted evidence, should not be submitted to the jury; but nothing in the opinion of the court imports a departure from the uniform and inveterate rule that, when the terms of an alleged libel are ambiguous or equivocal, their meaning is a matter for determination by the jury. Undoubtedly, if the language of the charge were incapable of a defamatory imputation, then, indeed, it was the duty of the court to dismiss it from consideration by the jury. On the other hand, however, although when the charge imports a libel *per se* it is the right of the court so to instruct, yet if, instead, the ques-

tion be submitted to the arbitrament of the jury, manifestly the error is not of prejudice to the defendant, and is inoperative to invalidate the judgment. We are of opinion that upon both points, namely, the libelous nature of the imputation and the submission to the jury, the learned trial judge, with characteristic care and caution, expounded the law most indulgently for the defendant.

1. The court would have been justified in a peremptory instruction that the charge was *per se* a libel. What was it ? That, "the war ended, he went to Utah, where he joined the Mormons, and at one time had a great deal of influence in church matters at Salt Lake." By all authorities, any unprivileged publication of which the necessary tendency is to expose a man to hatred, contempt, or ridicule is a libel; and in solving the question whether a paper be libelous "it is to be understood by the court in the sense in which the world generally would understand it, giving to the words their ordinary meaning; and, in understanding what was meant and conveyed, the scope and meaning of the whole article is to be considered." DALY, C. J., in *Williams* v. *Godkin*, 5 Daly, 499, 501, 502. Accepting the word "Mormon" in its ordinary sense,—in the sense current in the community,—what meaning does it convey? Can it be doubted that it imports a disparaging imputation, and that its necessary tendency is to expose the object of it to hatred, contempt, and ridicule? It is not a colorless appellation; it is not a flattering appellation; it is an injurious appellation, of which the necessary effect is to "impair reputation, and lower one to whom it is applied in the esteem and opinion of the community," and hence is *per se* a libel. Id. 502. And why so? Because of the ideas popularly associated in the mind,—religious imposture, a hierarchy in government incompatible with civil and religious liberty, and the profession and practice of polygamy, an institution abhorrent to the instincts and offensive to the morals of the American people. If the fact were material, by reference to public history, of which the court takes judicial notice, (*Swinnerton* v. *Insurance Co.*, 37 N. Y. 174,) by reference to public statutes, of which all tribunals have cognizance, (9 U. S. St. at Large, p. 76; *Reynolds* v. *U. S.*, 98 U. S. 145,) and by recourse to the "public notoriety," which dispenses with specific proof, (1 Greenl. Ev. § 6; *Mormon Church* v. *U. S.*, 136 U. S. 48, 49, 10 Sup. Ct. Rep. 792,) it might be established to demonstration that polygamy, as well in conduct as in creed, is a spiritual element of Mormonism. But the fact is immaterial, and it suffices for the argument that in the popular conception Mormonism is inseparably associated with the doctrine and practice of polygamy; for then to be deemed a Mormon is to be regarded as guilty, in thought and purpose at least, of "a crime against the law, and abhorrent to the sentiments and feelings of the civilized world." BRADLEY, J., 136 U. S. 48, 10 Sup. Ct. Rep. 805. Surely in this community such an opinion of the plaintiff could not fail to injure his reputation by exposing him to hatred, contempt, and ridicule,—if, indeed, contempt and ridicule were not lost in the more malignant impulses of execration,—and such an opinion of the plaintiff the defendant propagated by publication of the libel in controversy. In *Bailey* v. *Publishing Co.*, 40 Mich. 251, the court took judicial notice of the defamatory meaning of the term "Beecher business" when applied to a clergyman; and in *Cerveny* v. *Chicago Daily News Co.*, (Ill. Sup.) 28 N. E. Rep. 692. it was held libelous to publish of a person that he is an "anarchist." But that defendant meant to impute to plaintiff approval, at least, of polygamy, is corroborated by the context of the charge. It is alleged that he not only "joined the Mormons," but that he acquired "a great deal of influence in church matters at Salt Lake;" implying an earnest adoption by plaintiff of the creed of Mormonism, and an active participation in its councils. Coupling the charge in question with the statements of his eminence in the Mormon church, of his having been lynched for the murder of his wife, of his having been married five times,

and of his last marriage having been compulsory, it is impossible to resist the conclusion that the accusation of joining the Mormons was intended to load the plaintiff with the reproach of lawless and profligate indulgence in lustful gratifications.

2. But the learned trial judge did not rule the charge to be libelous as matter of law; he submitted the meaning of the charge to the jury, with the instruction that unless it imputed a criminal offense it was not defamatory. What more charitable construction of the law could the court have employed for the protection of the defendant? It is not for defendant to complain that the court told the jury, in effect, that an imputation subjecting plaintiff to hatred, contempt, and ridicule was ineffectual to a verdict in his favor. The charge being susceptible of a defamatory construction, that the court did not err, as against defendant at least, in referring its meaning for decision by the jury, is too well settled for further argument. *Bergmann* v. *Jones*, 94 N. Y. 51, 52; *Sanderson* v. *Caldwell*, 45 N. Y. 398; *Lewis* v. *Chapman*, 16 N. Y. 369. Judgment and order affirmed, with costs. All concur.