(14 Misc. Rep. 326.)

VAN INGEN v. MAIL AND EXPRESS PUB. CO.

(Common Pleas of New York City and County, General Term. November 4, 1895.)

1. LIBEL AND SLANDER—CHARGING BRIBERY OF VOTERS.
    A publication which charges plaintiff with bribing voters is libelous per se.
2. SAME—IDENTIFICATION OF PLAINTIFF.
    In an action for libel plaintiff may show by extrinsic evidence that the publication referred to him, though it did not name him.
3. EVIDENCE—EXPLAINING MATTERS ELICITED ON CROSS-EXAMINATION—HEARSAY.
    In an action for libel plaintiff testified on cross-examination that he had previously sued another person in another country for publishing the same defamatory matter, and that it was orally agreed in court, pending the trial, to compromise the action on the tendering by defendant therein of a written apology, to be approved by the court, and the payment of damages to be named by the court. Held, that testimony given by plaintiff on his redirect examination as to the terms of the compromise and the statements of the judge was not objectionable as hearsay.
4. SAME—CONCLUSIONS OF WITNESS.
    In an action for libel in publishing an article which stated that "the London head of a large New York firm of cloth jobbers" [meaning plaintiff] was the leader of an undertaking to raise money in England to bribe voters in the United States, questions addressed to plaintiff as to whether there was any other person than himself who was the London head of a New York firm of cloth jobbers, and to a witness for plaintiff as to who was the head of the London firm with which plaintiff was connected, do not call for conclusions.
5. LIBEL AND SLANDER—REFERENCE TO PLAINTIFF—EVIDENCE.
    Testimony of a witness for plaintiff to the fact that plaintiff had held a leading position in the cloth-jobbing trade for many years was material

as tending to identify plaintiff's firm with the "large New York firm of cloth jobbers" alluded to in the publication.

6. APPEAL—HARMLESS ERROR.
The admission of incompetent evidence is cured by instructing the jury to disregard it.

7. TRIAL—INSTRUCTIONS.
Where the court in an action for libel had instructed the jury that exemplary damages could not be awarded, it is proper to refuse to charge "that the publication of other similar articles in other papers immediately prior to the publication of the article complained of is a matter the jury must consider in mitigation of damages," and "the fact that the same matter, substantially, was published extensively in the morning papers of the same day is to be considered by the jury in mitigation of damages."

Appeal from trial term.

Action by Edward H. Van Ingen against the Mail and Express Publishing Company for libel. From a judgment entered on a verdict in favor of plaintiff for $4,000, and from an order denying a motion for a new trial, defendant appeals.  Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Joseph H. Choate, for appellant.
Benjamin F. Tracy and Walter S. Logan, for respondent.

BISCHOFF, J.  The matter for the publication of which this action was brought appeared in the defendant's newspaper, the Mail and Express, issued upon the afternoon of November 7, 1892, and read as follows:

"British Gold to Help Cleveland.

"Democrats and Their English Allies Attempt to Purchase Votes—Americans will Resent the Insult.

"Not the First Time that the Claimant has Appealed to His Free-Trade Friends Across the Sea to Come to His Assistance—The Workingmen will Give Their Answer to This Diabolical Outrage .To-Morrow—The Closing Days of a Spirited Campaign.

"The Cobden Club of England has apparently become tired of trying to influence United States elections in behalf of Democratic free-trade candidates by spending millions of dollars in the campaigns here, and the friends of the free-trade claimant have had to hustle about Great Britain themselves to get the money which English manufacturers are willing to give up to buy votes for their friend Cleveland, and to kill their most hated enemy, McKinley Bill. The account of the raising abroad of a great corruption fund by protection America's enemies and Free-Trade Cleveland's friends has just been cabled over.  The London head of a large New York firm of cloth jobbers is reported as the leader of this movement to get together and send to America nearly half a million of British gold with which to push the cause of the Anti-Tariff Democracy and its candidate for the presidency, Cleveland. To him and his representatives, the mill owners of Bradford, Huddersfield, and other big manufacturing and woolen-jobbing centers, under representations that only under Cleveland as president could the American market be opened to them, gave freely of their money, to help the claimant's campaign. * * * The claimant's friend in London refused to deny to the press that he had English money to such an amount to be spent on Cleveland."

Argument is of course unnecessary to demonstrate the meaning of the publication.  That it was intended to, and did in fact, charge

an attempt by means of bribery to corrupt the elective franchise of citizens of the United States, thereby to debauch such citizenship itself, must be patent to every one from mere inspection. The offense, because of its tendency to destroy social and political order, is regarded by all virtuous citizens with abhorrence, and exposes the person accused thereof to infamy, and the scorn, hatred, and contempt of others. If, therefore, the accusation, being false, was published of and concerning the plaintiff, and so understood by those who knew him (Bourke v. Warren, 2 Car. & P. 307), it was, aside from its imputation of criminality, libelous per se, and entitled the plaintiff to maintain the action without proof of special damage. Morey v. Association, 123 N. Y. 207, 25 N. E. 161; Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 491, affirmed 137 N. Y. 599, 33 N. E. 743; 13 Am. & Eng. Enc. Law, pp. 297–308. It was none the less libelous that the published accusation did not designate the plaintiff by name, if by intrinsic reference the allusion was pointed. Van Vechten v. Hopkins, 5 Johns. 211; Gidney v. Blake, 11 Johns. 54; Sumner v. Buel, 12 Johns. 475; Townsh. Sland. & L. § 343. Whether or not the allusion was to the plaintiff was a question of fact (Green v. Telfair, 20 Barb. 13), which, within the rule obtaining in the trial of civil cases, was not required to be determined beyond the possibility of reasonable doubt (Ferry Co. v. Moore [N. Y.] 6 N. E. 293). The inquiry concerned the probability of the fact from the evidence (Goodrich v. Woolcott, 3 Cow. 231, 239), and, scrutinizing the latter, we are of the opinion that there was justification for the jury's conclusion that the defamatory article alluded to the plaintiff, and that it was so understood by those who were conversant with the premises. This, without reference to publications in other newspapers, to the admission of which in evidence the defendant objected. The language, "the London head of a large New York firm of cloth jobbers," was fairly susceptible of an interpretation that the member at the time in charge of the firm's London branch was intended to be referred to, and testimony adduced for the plaintiff supported a reasonable inference that the designation was applied to him. From such testimony it appeared that the plaintiff, at the time of the publication of the defamatory matter, was, and for many years had been, the senior member of E. H. Van Ingen & Co., merchants at New York, in foreign and domestic woolen goods, having a branch of their business at London; that the firm was prominent in and generally known to the trade as cloth jobbers; that no other New York firm in the like business had a branch in London; that for many years the plaintiff had, at regular intervals, visited his firm's London branch, upon which occasions he assumed charge of the business there, and personally conducted negotiations with English manufacturers for the supply of merchandise; and that at the very time of the publication he was in London upon one of such visits, and in charge of his firm's business. No testimony for the defendant was adduced to challenge the fact of the allusion. For the reasons stated the motions for dismissal of the complaint and the direction of a verdict for the defendant were properly denied.

Upon cross-examination of the plaintiff the defendant's counsel elicited the facts that the plaintiff had previously brought an action in England against the Dalziell News Company to recover damages for the publication of the same defamatory matter, and that it was orally agreed in court by the parties and their solicitors and counsel, pending the trial thereof before the lord chief justice, to compromise the action upon the tender by the defendant of a written apology, to be approved by the court, and the payment, in addition to the costs, of a sum for damages, also to be named by the court. Having maintained the relevancy and materiality of this testimony by inquiry into the terms of such oral agreement, and the manner in which it was carried out, the defendant could not thereafter, with consistency, object to the plaintiff's testimony upon his redirect examination with regard to what was said and done at the time by the several persons concerned in the making of the agreement and its performance, since only from such statements and the concomitant acts of the persons making them could the terms of the compromise agreement be accurately ascertained. Obviously, the inquiry upon the redirect examination was aimed to show only that certain statements were made, and certain acts done, with the purport of still further showing what the agreement entered into and performed was, and not to ascertain whether or not the substance of what was said or written at the time was true or false in point of fact. Neither the apology nor the statements of the lord chief justice were therefore objectionable as hearsay evidence. Underh. Ev. § 51.

Interpreting the inquiry addressed to the plaintiff upon his direct examination, "Is there any other person whatever, than yourself, who is the London head of a New York firm of cloth jobbers?" as calling upon the witness to say whether or not any other New York firm of cloth jobbers maintained a branch of their business at London, in the charge of a member, it did not necessarily call for the statement of a mere conclusion or opinion. The subject-matter of the inquiry was open to the objective perception of one acquainted with the merchants of both cities, as the plaintiff was shown to be. Sweet v. Tuttle, 14 N. Y. 465, 471; Knapp v. Smith, 27 N. Y. 277, 281.

The defendant's editor, called as a witness for the plaintiff, testified, under objection on the ground of immateriality, that the article published and complained of was written under his direction, and that the cable therein referred to was an alleged cable published in several morning newspapers of the same day. Copies of the newspapers alluded to were identified by the witness, and the alleged cable which named the plaintiff admitted in evidence, under the like objection of the defendant's counsel. We are of the opinion that the evidence was admissible to show actual malice of the defendant, but, assuming it to have been inadmissible for any purpose, the error of its admission was cured by the instructions to the jury, made at the request of the defendant's counsel,— that, in determining whether or not the allusion in the publication complained of was to the plaintiff, they must disregard all evi-

dence of the publication by others of the same matter. Chesebrough v. Conover, 140 N. Y. 382, 389, 35 N. E. 633. The instruction to disregard the evidence admitted under objection and exception was equivalent to a direction that it be stricken from the record. Holmes v. Moffat, 120 N. Y. 159, 162, 24 N. E. 275.

The testimony of the plaintiff's witness Willis, which was to the effect that the plaintiff held a leading position in the trade for many years, was material, as tending to identify the plaintiff's firm with the "large New York firm of cloth jobbers" alluded to in the publication complained of.

The question asked of Leahy, the plaintiff's partner, and a witness called in his behalf, with reference to the London house of E. H. Van Ingen & Co., "And who is the head of that?" called for a fact, and not a conclusion. Sweet v. Tuttle, supra; Knapp v. Smith, supra. The further question addressed to the same witness, "Do you know of any other London head of a New York firm of cloth jobbers?" called for an affirmation or negation of knowledge only, and was not objectionable upon that ground.

No error resulted from the court's refusal to charge "that the publication of other similar articles in other papers immediately prior to the publication of the article complained of is a matter the jury must consider in mitigation of damages," and "that the fact that the same matter, substantially, was published extensively in the morning papers of the same day is to be considered by the jury in mitigation of damages." The plaintiff, upon proof of the libel, was at least entitled to compensatory damages, and, the court having instructed the jury that exemplary damages were not to be awarded, a charge as requested by the defendant's counsel would have been irrelevant and misleading. Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 491; cases in note to McAllister v. Detroit Free Press Co. (Mich.) 15 Am. St. R. 318, 339, etc., (43 N. W. 431). Furthermore, no such defense in mitigation was pleaded. Code Civ. Proc. §§ 508, 535, 536; Willover v. Hill, 72 N. Y. 36.

The defendant's further requests to charge "that, unless the jury find actual malice on the part of the defendant, they can give no exemplary damages," and "that actual malice consists in a willful intent to injure the plaintiff," were plainly immaterial and irrelevant, in view of the fact that the court charged that, as matter of law, the plaintiff was not entitled to exemplary damages.

The court substantially charged the defendant's eleventh and twelfth requests, in the following language: "That the defendants are not responsible for anything, whether in any other newspaper, or for any damage done to plaintiff by any such other publication."

Obviously the request to charge "that it is necessary for the plaintiff to prove to the satisfaction of the jury that the plaintiff was known as 'the London head of a large New York firm of cloth jobbers,' before they can find a verdict for the plaintiff," was properly refused. It was not necessary to the maintenance of the action that before the defamatory publication the plaintiff had attracted general notice under the specific appellation which the defendant may have conceived for the occasion. The pertinent and

material inquiry for the jury was whether or not the allusion to the plaintiff, by whatever description, was such that those who knew him were reasonably justified in their conclusion that he was the person intended to be accused. Bourke v. Warren, supra, approved in Miller v. Maxwell, 16 Wend. 9, 18. The judgment and order appealed from should be affirmed, with costs. All concur.