TYNDALE PALMER, Appellant, *v.* GEORGE E. MATTHEWS and CHARLES
E. AUSTIN, Respondents.

*Libel — competency of a letter written by plaintiff to defendants — cross-examination
of the plaintiff as to other suits for the same libel.*

In an action for libel brought against the proprietors of a newspaper, the
plaintiff upon his cross-examination was asked in reference to similar actions
brought by him against other newspapers for the publication of the same arti-
cle, after a letter, written by the plaintiff to the defendants, had been offered by
the defendants and received in evidence, without objection, in which the plain-
tiff inclosed some clippings from other newspapers, and wrote, "I am prepared
to demonstrate to you, as I already have done to the counsel of the papers
which I inclose, that the charges made were absolutely baseless, and that, in
addition to the ordinary injuries always arising from such false and infamous
charges, my business interests received a direct injury from your publication.
The financial loss to me from the publication as a whole was most serious. How-
ever, I do not expect any one paper to bear it all, but only its due proportion."

The letter in question was one of a series of five written by the plaintiff to the
defendants, four of which the plaintiff had already read in evidence.

*Held,* that, under the circumstances, it was entirely proper for the defendants to
complete the series by introducing the letter which was omitted; and, having
done so, to cross-examine the plaintiff respecting its contents;

That the plaintiff, having, in answer to an inquiry as to how many papers the
article had been published in, replied that he did not know, it was proper for
the defendants to refresh his recollection by asking him how many papers he
had brought actions against.

HARDIN, P. J., and FOLLETT, J., dissented.

APPEAL by the plaintiff, Tyndale Palmer, from a judgment of the
Supreme Court in favor of the plaintiff, entered in the office of the
clerk of the county of Erie on the 19th day of May, 1897, upon the
verdict of a jury for six cents damages, and also from an order
entered in said clerk's office on the 24th day of May, 1897, denying
the plaintiff's motion for a new trial made upon the minutes.

The defendants are the proprietors of a daily newspaper pub-
lished in the city of Buffalo, known as the *Illustrated Buffalo
Express,* and, on the 2d day of October, 1892, they caused to be
published therein an article concerning the plaintiff, of which the
following is a copy, viz. :

"THEY STOLE $440,000.

"PHILADELPHIA, Pa., Oct. 1. The theft of $440,000 from The
Auer Incandescent Light Company by Tyndale Palmer, a former

Philadelphia newspaper man, in which he was joined by a hotel keeper named Freitas, of Rio Janeiro, has just been brought to light.

"The company is owned solely by A. O. Granger, the president, and ex-Senator Gazzam, the vice-president. They formed the South American Welsbach Incandescent Light Company, and sent young Palmer to Rio to boom the invention. He and Freitas sold the patent rights for $510,000 in gold, and upon Palmer's return he reported the sale as having been made for $80,000, of which $10,000 was expended in his salary, expenses and commission.

"The theft was not learned until two other men were sent to Brazil on a second mission, although reports had reached the ears of the company. Palmer was sent to England to negotiate securities of one of ex-Senator Gazzam's iron companies, and, upon demanding a higher commission, was dismissed. Palmer cannot be returned from England, but action is being taken to recover sums which he expended in buying farms for relatives. The second trip was made to Brazil to 'sell improvements on the original Welsbach invention which caused the title to be changed to the Auer Company.'"

The publication of this article was admitted by the defendants in their answer, but they alleged by way of mitigation that the same was furnished to them by an association known as "The United Press," which was engaged in the business of collecting and transmitting news by telegraph to its subscribers and patrons; that they received the article in the regular course of business, and, in common with many other newspapers throughout the country, published the same in good faith and in reliance upon its accuracy and truth.

The issues thus joined were tried at the Erie Trial Term, and the trial resulted in a verdict for six cents damages in favor of the plaintiff. From the judgment entered thereon as well as from an order denying the plaintiff's motion for a new trial on the minutes, this appeal is brought.

*Tyndale Palmer*, appellant, in person.

*Charles B. Wheeler*, for the respondents.

ADAMS, J.:

Several exceptions to the rulings of the trial court are pressed upon our attention by the plaintiff, who appeared in person upon the argument of this appeal, and it is claimed that they present error which requires a reversal of the judgment and order appealed from. But after careful examination of the same we find ourselves unable to acquiesce in this contention.

To our view the most serious question which the case presents is that raised by exceptions to certain inquiries put to the plaintiff upon his cross-examination relative to similar actions brought by him against other newspapers for the publication of this identical article.

It appears that, before the present action was commenced, the plaintiff demanded of the defendants that they retract the alleged libel and compensate him for the injury which he claimed to have sustained in consequence of its publication. This demand was in the form of a letter, which was followed by several other letters written by the plaintiff and sent to the defendants, in one of which, under date of July 17, 1894, were inclosed some clippings, from other newspapers, and in regard to which the plaintiff wrote as follows, viz. : " I am prepared to demonstrate to you, as I already have done to the counsel of the papers which I inclose, that the charges made were absolutely baseless, and that, in addition to the ordinary injuries always arising from such false and infamous charges, my business interests received a direct injury from your publication. The financial loss to me from the publication as a whole was most serious. However, I do not expect any one paper to bear it all, but only its due proportion. * * * "

This letter was offered by the defendants and received in evidence without objection during the plaintiff's cross-examination, and it was followed by inquiries to which we have already adverted and which simply called for a statement as to the number of papers he had brought actions against for publishing this same article.

The plaintiff bases his contention that the admission of this class of evidence was error upon the assumption that it was received by way of mitigation. In this, however, he is clearly mistaken, for the learned trial court was particular to say that it was admitted only by way of cross-examination, and in his charge to the jury neither

this nor any other circumstance save the absence of express malice and the source from which the defendants received the article was alluded to as mitigating in its character. The sole question, therefore, as we regard it, is, was the evidence thus objected to properly received in connection with the cross-examination of the plaintiff?

Subject to certain well-defined limitations, the range and extent of a cross-examination are generally within the discretion of the trial judge, and a court of review ought not to interfere unless it is made to appear that this discretionary power has been abused. (*Foster* v. *Tanenbaum*, 2 App. Div. 168; *People* v. *Casey*, 72 N. Y. 393.)

That the record in this case does not disclose any such abuse of power is, we think, perfectly apparent. In one of the letters written by the plaintiff under date of November 30, 1893, which was introduced in evidence by him, he alludes to the fact that other papers had published the libel, and claimed that it in no wise affected his right of action against the defendants. In the subsequent letter of July 17, 1894, he not only incloses clippings from some of those papers, but informs the defendants that all he asks of them is that they shall bear their due proportion of the pecuniary compensation he was seeking to obtain through the medium of his various actions.

This last-mentioned letter was one of a series of five written by the plaintiff to the defendants, four of which he had already read in evidence. In these circumstances we think it was entirely proper for the defendants to complete the series by introducing the one which had been omitted; and having done that, to cross-examine the plaintiff respecting its contents. In pursuing this course, the plaintiff's attention was directed to the statement in his letter that this particular article had been published by other papers, and, upon his conceding that such was the fact, he was asked how many papers had published it, to which he replied that he did not know. Up to this point there certainly can be no doubt as to the propriety of the questions put to the plaintiff, and had he answered the last one it would perhaps have been all that the defendants were entitled to. But, inasmuch as he disclaimed any knowledge upon the subject of the inquiry, we are unable to see why it was not perfectly legitimate for counsel to pursue it, and, in order to refresh the recollection of the witness, ask him how many papers he had brought actions

against.  The answer to this question furnished some information as to the number of papers which had published the article, and while it may, as is claimed, have had a tendency to reduce the amount of the plaintiff's recovery, that circumstance does not make its reception error, provided it was competent for any purpose.

As has been well said by an eminent jurist, "A party who seeks to testify in his own behalf must take the risk if there are vulnerable joints in his harness." (*People ex rel. Phelps* v. *Oyer & Terminer County of N. Y.*, 83 N. Y. 461.)

One of the principal objects of a cross-examination is to expose these " vulnerable joints," and it matters not whether they are the result of defective character, contradictory statements or declarations against interest, their discovery is one of the risks which a party assumes when he takes the stand as a witness in his own behalf.  As has been already intimated, this is the only question which we deem it necessary to discuss, and as it, to our mind, presents no error, our conclusion is that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs.

GREEN and WARD, JJ., concurred; HARDIN, P. J., and FOLLETT, J., dissented.

HARDIN, P. J. (dissenting):

In October, 1892, the defendants were the owners, proprietors and publishers of a daily newspaper known as the *Illustrated Buffalo Express*, which was published in the city of Buffalo and had a large circulation there and in other parts of the State.

Plaintiff's complaint alleges that on the 2d of October, 1892, the defendants published, in their said newspaper, a certain article " in which the defendants did falsely, wickedly and maliciously publish, and cause and procure to be published, of and concerning the plaintiff, the false, scandalous and defamatory words or matter " particularly set out in the complaint.  The plaintiff avers that the said article in so far as it stated or insinuated that the plaintiff " has been or was guilty of any theft or other crime or offense, or of any infamous or disgraceful act, either alone or in conjunction with any other person, or that he had sold the patent rights of the American Welsbach Incandescent Light Company or the Auer

Incandescent Light Company for $510,000, or for any sum other than the sum reported and accounted for by him to said Welsbach Company, to wit, the sum of $80,000 ; or that he was a fugitive from justice, or that he had embezzled any proceeds of said sale or any moneys belonging to his employers, or to any one else, or had improperly expended such proceeds or moneys in buying farms for relatives or otherwise, were, and are, utterly false, malicious and defamatory; and plaintiff avers that he was never guilty of any of the infamous and disgraceful acts that are stated or insinuated in said article."

The complaint alleges that the printing and publishing of the article has injured his good name and reputation to his damage in the sum of $25,000. There is no averment in the complaint of special damages.

The answer of the defendants admits that they are the owners, proprietors and publishers of the newspaper stated in the complaint, and that on the 2d day of October, 1892, there was published in one edition only of the said *Illustrated Buffalo Express* the article set forth in the complaint. By way of mitigation of damages the answer alleges that the defendants were subscribers to and patrons of the United Press, which was an association organized and existing and engaged in the collection and transmission to its patrons and to newspapers generally throughout the United States of the general news of the whole world.

The answer also avers : " That on or about the said 2d day of October, 1892, the said United Press did transmit and deliver to the editors of the defendants' paper the article or dispatch set forth in said complaint; that said dispatch was furnished and received by said editors in the regular course of business in common with other telegraphic news ; that said editors, believing in and relying upon the truth of the statements contained in said dispatch, and without any malice on their part, or on the part of any one connected with said paper, did in good faith publish the same in common with very many other newspapers throughout the country; that said article was published in good faith, without any malice on the part of these defendants or on the part of any of their editors or employees towards the plaintiff, but in the belief of the truth of the same ; that prior to the publication of the said article com-

plained of by the said plaintiff, the same article, or articles containing the substance thereof, had been and were published by many other newspapers throughout the United States and in the community and parts of the country where said plaintiff was known." The answer contains no other matter by way of defense or in mitigation.

Plaintiff was sworn as a witness in his own behalf and produced and read in evidence a letter which had been written to the defendants, bearing date in November, 1892, which, when read in evidence, was marked Exhibit A. He testified that he wrote another letter to the defendants, bearing date November 30, 1893, which was read in evidence and marked Exhibit C. He also testified that he wrote to the defendants another letter, bearing date November 4, 1894, which was read in evidence and marked Exhibit D. He further testified that on April 19, 1894, he addressed to the defendants another letter, which was read in evidence and marked Exhibit E, and he testified that he received no answer to that letter from the defendants, and that the defendants had never made any retraction of the charge to the knowledge of the plaintiff.

During the course of the cross-examination of the plaintiff he was shown another letter written by him to the defendants which was dated Washington, Iowa, 7–17–94. Among other things contained in that letter were the following words : " The financial loss to me from the publication as a whole was most serious. However, I do not expect any one paper to bear it all, but only its due proportion. Just and reasonable reparation, coupled with broad and unequivocal retraction, is the only basis of settlement upon which I can meet any paper. Neither one nor the other has been, can be, or will be accepted alone." The cross-examination continued at great length. After considerable discussion between the counsel of the respective parties and the court, the following appears in the record : " Plaintiff's Counsel: We contend here that the fact that somebody else may have, although the fact does not appear here, published this same libel or a similar one is not competent evidence. Question read by the stenographer as follows: 'Had you read it elsewhere before ? ' Now, within the rule, it is no part of the cross-examination ; it is not admissible unless it is shown that they had notice or knowledge of any previous publication. I think that is not pleaded. Defendants' Counsel: Yes. Plaintiff's Counsel:

Well, it may be. I object to it certainly as not part of the cross-examination, and it should be followed, if it can be, by proof; then the witness may be examined, perhaps, about it if the evidence is admitted. But here and now, without further discussing the main question of its admissibility, I submit it is not competent and not admissible. The Court: Well, Mr. Wheeler, you may pass it for the present."

The cross-examination continued, and the following occurred: " Q. And you wrote in your letter to Mr. Matthews, did you not, ' The financial loss to me from the publication, as a whole, was most serious. However, I do not expect any one paper to bear it all, but only its due proportion.' You said that to Mr. Matthews, did you not? A. The letter speaks for itself. Q. Then you did recognize the fact, did you not, that this particular article in question had been published by a large number of other papers? Plaintiff's Counsel: That I object to. The Court: He may answer. Plaintiff's Counsel: Please note the exceptions on the grounds as before — that it is not admissible in mitigation, or for any other purpose. The Court: I think that it is a proper cross-examination as to this letter. A. The letter says so. Q. Well, what is the fact? A. The letter states the fact. Q. The letter states the truth; that it had been published. I ask you if you did not know the fact that it had been published by a large number of other papers throughout the country? A. I did. Plaintiff's Counsel: That I object to the same as before. The Court: Yes, you may have the exception. Q. How many had published it? A. I do not know. Q. How many had you brought suit against, at least? Plaintiff's Counsel: That I object to, as before. The Court: He may answer. Plaintiff's Counsel: Your Honor said it was proper cross-examination of this letter. That letter was introduced by the defendant. The Court: This witness is the party himself, and the matter of the order of proof is not of note. Plaintiff's Counsel: You will note an exception. Q. How many had you brought suit against for its publication? A. I could not say, but I think I may give you an idea in this way. Q. Give us the best statement you can make? * * * Q. In that action did you testify that you had brought suit against 152, or thereabouts? Plaintiff's Counsel: I object as not competent as to the bringing of suits, and same as before.

[Received and exception taken.] A. I did not. Q. Is it not a fact, Mr. Palmer, that you have brought suits against about 150? A. It is not. I do not personally know Mr. Matthews, the defendant here, nor Mr. Austin, his partner in business."

The fact that the plaintiff had brought suits against other parties was not relative or material to the issue formed by the pleadings. Nor was it necessary to shed light upon the direct examination, nor did it tend to impair the credibility of the witness or impeach any portion of the evidence given by him in chief. Nor do we think the fact that the defendant had put in evidence a letter from which the quotation is made warranted the cross-examination to the extent it was allowed to be carried.

In *Witcher* v. *Jones* (43 N. Y. St. Repr. 151; S. C., 17 N. Y. Supp. 491) it was held, viz.: "In an action for libel, where exemplary damages are demanded, it is competent to prove, in mitigation, previous publications of the libelous matter by others, known to defendant at the time of his publications, and relied upon by him as authority. But evidence of contemporaneous publications by others does not tend to disprove malice and is inadmissible." In the course of the opinion delivered in that case PRYOR, J., said: "If, therefore, the defendant uttered the libel in good faith upon the authority of others, that circumstance manifestly tends to disprove a malicious motive in the publication; and, accordingly, in mitigation of damages, the defendant may always show other publications, known to him at the time of his repetition of the defamatory matter. But, obviously, his motive in the publication could not have been affected by a fact of which he was then ignorant, and hence the palpable absurdity of admitting such fact in disproof of malice." (Citing *Hatfield* v. *Lasher*, 81 N. Y. 246; *Willover* v. *Hill*, 72 id. 36; *Morey* v. *Morning Journal Assn.*, 123 id. 207.)

In *Van Ingen* v. *Mail & Express Pub. Co.* (35 N. Y. Supp. 842) the court was requested to charge: "That the fact that the same matter, substantially, was published extensively in the morning papers of the same day is to be considered by the jury in mitigation of damages." The court refused to make such charge, and it was held that no error was committed.

In *Folwell* v. *Providence Journal Co.* (37 Atl. Rep. 6) the Supreme Court of Rhode Island said: "The defendant's offer to

show that the same article was published by other papers on the same day, for which other suits had been brought, was properly refused. The acts of other publishers are independent acts, which could in no way affect the defendant."

In *Smith* v. *Sun Printing & Pub. Co.* (55 Fed. Rep. 240) it was said : " Defendant further contends that the court erred in excluding testimony as to other suits having been brought against other newspapers. This objection is unsound. Such evidence was wholly irrelevant and immaterial. \* \* \* That other newspapers which published similar libels had been prosecuted by the plaintiff for their acts was a matter with which neither court nor jury had any concern."

The doctrine of that case seems to have been followed in *Bennett* v. *Salisbury* (78 Fed. Rep. 769).

It is contended by the learned counsel for the respondent that the cross-examination for the purpose of showing how many other publications had been made and how many suits had been brought by reason thereof by the plaintiff, was proper " to show the kind of a man the plaintiff is, by showing the attitude which he has assumed touching the subject-matter of the libel in question." We think there is no force in that view of the matter. The fact that numerous other parties had libeled the plaintiff, and that he had sought retractions from the several wrongs thus perpetrated upon him, did not tend in any way to impeach his general character or to mitigate the offense of the defendants in publishing the article mentioned in the complaint. As was said by KENT, Ch. J., in *Tillotson* v. *Cheetham* (3 Johns. 61): " The plaintiff is entitled to his strict compensation for every injury. A satisfaction for one *tort* is no satisfaction for another."

Such was the rule in England (*Saunders* v. *Mills*, 6 Bing. 213 ; S. C., 3 M. & P. 520) until 1888, when it was changed by the 6th section of chapter 64, 51 and 52 Victoria, which provides :

" Sec. 6. At the trial of an action for a libel contained in any newspaper the defendant shall be at liberty to give in evidence in mitigation of damages that the plaintiff has already recovered (or has brought actions for) damages or has received or agreed to receive compensation in respect of a libel or libels to the same purport or effect as the libel for which such action has been brought."

The respondent's learned counsel calls our attention to *People ex rel. Phelps* v. *Oyer & Terminer County of N. Y.* (83 N. Y. 460) and claims that it is an authority justifying the extent to which the cross-examination was allowed. In the course of the opinion delivered in that case it was said : "As a general rule the range and extent of such an examination is within the discretion of the trial judge ; subject, however, *to the limitation that it must relate to matters pertinent to the issue, or to specific facts which tend to discredit the witness or impeach his moral character.*"

It is difficult to see that the circumstance that several other newspapers had published a libel of the plaintiff tended to discredit him or to impeach his moral character.

From an inspection of the record, and especially upon a consideration of the amount of the verdict — six cents — we are not able to say that the extent to which the cross-examination was allowed in respect to the matters which we have already alluded to, did not work injury to the plaintiff.

In *Matson* v. *Buck* (5 Cow. 500) it was said that a nominal verdict is "equal to a verdict for the defendant," and in *Gilman* v. *Lowell* (8 Wend. 573) it was said that a nominal verdict "is about equal to a verdict against him," and in *Sanderson* v. *Caldwell* (45 N. Y. 398) it was said that a nominal verdict, where the plaintiff's character remains unimpeached, is a total denial of justice, since it in effect says that, though the charges were untrue, the plaintiff had no character to lose.

The same doctrine was stated by MACOMBER, J., in *Griebel* v. *Rochester Printing Co.* (60 Hun, 319, 322).

An inspection of the evidence found in the record renders it difficult to understand why the jury reached the conclusion that only nominal damages should be given, and that the plaintiff should not receive at its hands substantial damages.

We are of the opinion that the order denying the motion for a new trial, and the judgment entered upon the verdict, should be reversed.

FOLLETT, J., concurred.

Judgment and order affirmed, with costs.