**FOLTZ v. NEWS SYNDICATE CO., Inc.**

United States District Court
S. D. New York.
Aug. 17, 1953.

John J. Von Der Lieth, New York City, for plaintiff.

Townley, Updike & Carter, New York City, J. Howard Carter and Andrew L. Hughes, New York City, of counsel, for defendant.

WEINFELD, District Judge.

Plaintiff seeks to recover damages for an alleged libel based upon an editorial published in the November 7, 1951, issue of the defendant's newspaper, The Daily News. Jurisdiction rests upon diversity of citizenship.

Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., with the amount of damages to be later assessed. The defendant cross-moves (1) to dismiss the action upon the ground that the complaint fails to state a claim against the defendant upon which relief can be granted; or, in the alternative, (2) for summary judgment in its favor.

The editorial which gives rise to the present action commented upon a decision by the Supreme Court of the United States in a libel and slander action brought by the plaintiff against the Moore McCormack Lines, Inc. In that action plaintiff sued Moore McCormack Lines, Inc., his former employer, for maliciously giving to the Federal Bureau of Investigation false and derogatory statements which caused him to be discharged from a federal office to which he had been appointed. The defamatory matter complained of was both written and oral and charged the plaintiff with various acts of misconduct. There is no need to specify these charges other than to state they were entirely unrelated to Communistic or subversive activity or affiliation.[1] Plaintiff's amended complaint had been dismissed by the District Court on the ground that the complaint failed to state a claim upon which relief could be granted, but the Court of Appeals reversed, holding that statements made to the Federal Bureau of Investigation are not absolutely privileged and that if actuated by malice, the privilege is lost.[2] The Government assumed the defense of the action since it was liable to indemnify the Moore McCormack Lines, Inc. under the wartime general agency agreement between the latter and the War Shipping Administration.

Following the reversal by the Court of Appeals, the Solicitor-General filed a petition for a writ of certiorari. In support of the writ it was urged, at the instance of the Director of the FBI, that the administration of the Government employee and security programs, as well as other phases of law enforcement, would be seriously hampered unless communications by citizens to Government agencies and officials made in the course of official inquiry were protected by absolute privilege and the declarants held immune from libel actions. The Supreme Court, however, denied certiorari on November 5, 1951.[3] It was this denial which prompted the editorial complained of in the present action.

The editorial appears under the title "Mustn't Be Beastly to the Bolos". It comments upon two decisions of the Supreme Court handed down several days previously and relates these to the Communist menace in the United States. The first decision dealt with the question of bail in a prosecution against alleged Communist leaders on the West Coast under the Smith Act, wherein the Court concluded that proper criteria had not been applied in fixing bail.[4] The second decision referred to was the denial of certiorari in the plaintiff's case. Neither decison was referred to by title, nor were any names mentioned. The editorial, after first commenting upon the bail case, continued:

"The other 'musn't be beastly to the bolos' decision had to do with people who buzz J. Edgar Hoover's Federal Bureau of Investigation about persons suspected of Communist activities.

"The FBI habitually covers up for such informers as best it can. But if a person thus informed on can catch up with the giver of the tip, the Supreme Court held Monday that he can bring suit for slander or libel, only provided he can show that the information was passed to the FBI with malice.

"We haven't yet met or heard of a genuine American who didn't feel malicious about the domestic Reds. You can't help entertaining some resentment against people who are conspiring to overthrow your Government by force and violence and turn you personally into a slave.

"But if you let your malice move you to tip off the FBI about the doings of some such person, you're laid open by this Supreme Court decision to a damage suit.

"It seems a certainty that the ruling will put a serious dent in Mr. Hoover's

---

1. The action having been instituted in this Court, judicial notice is taken of the records. See Fletcher v. Evening Star Newspaper Co., 77 U.S.App.D.C. 99, 133 F.2d 395.

2. Foltz v. Moore McCormack Lines, Inc., 2 Cir., 189 F.2d 537.

3. 342 U.S. 871, 72 S.Ct. 106, 96 L.Ed. 655.

4. Stack v. Boyle, 342 U.S. 1, 7, 72 S.Ct. 1, 96 L.Ed. 3.

pipelines, and thereby impair the splendid service the FBI renders in tracking down traitors.

"Apparently the Supreme Court doesn't yet realize what most of the rest of us have long known—that the Communists mean business, intend to ruin this country, will use any and every means at their disposal to do so, and therefore cannot be effectively handled under all the rules of ordinary American fair dealing.

"Instead of playing into the Reds' hands, isn't it about time to revise some of the rules as regards this very special and dangerous mob?"

The complaint alleges that the foregoing was published "of and concerning the plaintiff", and by this editorial the defendant meant and intended to mean and was understood by the reading public to mean, that the plaintiff was a person suspected of Communistic activities who had been informed upon to the FBI and had sued the informant for maliciously giving the FBI information about said suspected Communist activities; and further that ordinary rules of American fair dealing should not be afforded by the Supreme Court to such a person as the plaintiff, because he is a member of· a very special and dangerous mob, the domestic Reds.

The amended answer, besides denials, pleads that the editorial was fair comment upon matters of public interest and, therefore, privileged, and that it was based on reliable and trustworthy sources and was published in good faith and without malice.

The defendant's position is that the editorial does not name the plaintiff, makes no reference to the facts of the plaintiff's case, and fairly read cannot be deemed to refer to him. It argues that the editorial is nothing more than fair comment upon

the Supreme Court decision denying certiorari and as such it is privileged. It also challenges the innuendos. Finally, it denies that the editorial is false and defamatory. The plaintiff naturally contends to the contrary. In support of his motion, the plaintiff has presented items from the New York Times and the New York Herald Tribune on November 6, 1951 (the day previous to the appearance of the editorial in defendant's newspaper) which mentioned Cecil E. Foltz, Jr. and Moore McCormack Lines by name as the parties in the action and gives the gist of the case and the Supreme Court's decision.

First, as to the defendant's denial that the editorial is "of and concerning the plaintiff." Ordinarily, whether a written defamatory statement refers to the plaintiff is a question of fact and may be proved by extrinsic evidence. The need for the introduction of extrinsic evidence for such a purpose does not convert a defamatory statement which would otherwise be actionable without proof of special damage into one actionable only on proof of special damage.[5]

The news items which had appeared in the New York Times and the New York Herald Tribune may be introduced to show the condition of the public mind to establish that readers of the editorial necessarily understood that it applied to the plaintiff alone.[6] Moreover, upon a trial it may be shown that persons, other than those who read the Times and Tribune news items followed the case through the courts and readily recognized that the editorial was intended to and did refer to the plaintiff. Whether the editorial complained of was "of and concerning plaintiff" is a question of fact to be determined by the jury.[7]

5. Brayton v. Crowell-Collier Publishing Co., 2d Cir., 205 F.2d 644; see also Gross v. Cantor, 270 N.Y. 93, 96, 200 N.E. 592; Balabanoff v. Hearst Consolidated Publications, Inc., 294 N.Y. 351, 354, 62 N.E.2d 599; Estill v. Hearst Publishing Co., Inc., 7 Cir., 186 F.2d 1017; Nunnally v. New Yorker Staats Zeitung, 111 App.Div. 482, 97 N.Y.S. 911.

6. Van Ingen v. Mail & Express Pub. Co., 156 N.Y. 376, 50 N.E. 979.

7. Van Ingen v. Mail & Express Pub. Co., 14 Misc. 326, 329, 35 N.Y.S. 838, 840; Stokes v. Morning Journal Ass'n, 66 App. Div. 569, 73 N.Y.S. 245; Nunnally v. New Yorker Staats Zeitung, 111 App.Div. 482, 97 N.Y.S. 911.

So, too, whether the article is defamatory or susceptible to the innuendos as plaintiff alleges, presents issues of fact.[8] Though it may be conceded that the reference in the editorial to the Supreme Court decision as one having to do with "people who buzz J. Edgar Hoover's Federal Bureau of Investigation about persons suspected of Communist activities" does not, as a matter of law, identify the plaintiff as a person so suspected, certainly it would be within the competency of the jury to find that it did. The entire editorial is devoted to the Red danger in the United States. The jury may find that persons reading the editorial, particularly those who had seen plaintiff's name in the contemporary news reports of the case, understood that the information furnished to the FBI charged the plaintiff with suspicion of Communist activity and that his suit was against the informant for maliciously giving such information to the FBI. In point of fact, as already noted, the Supreme Court case wherein plaintiff sued Moore McCormack Lines, Inc. was entirely unrelated to any charge that he was suspected of Communistic activity or affiliation. A jury could properly find that the clause "the decision had to do with people who buzz J. Edgar Hoover's Federal Bureau of Investigation about persons suspected of Communist activities" purported to reflect the factual basis of plaintiff's suit, that plaintiff was a person suspected of Communist activities who had been informed upon to the FBI. This is in essence the innuendo set out in the complaint. That such a charge published in November, 1951, would tend to cause many to regard him with scorn and hostility, requires no extended discussion. It is enough to make the publication actionable without proof of special damage.[9]

The defendant next urges that the editorial is fair comment on a judicial proceeding and is absolutely privileged. However, the defense of fair comment requires that the facts be truly stated. A jury's findings that the editorial charged the plaintiff as one suspected of Communistic activities would of necessity imply that there was a misstatement or omission of material fact. As such, it is not within the privilege accorded to fair comment.[10]

In the light of the foregoing, it is clear that the motion of the defendant to dismiss the complaint for failure to state a claim cannot prevail.

The basis of defendant's motion for summary judgment is that plaintiff will be unable to establish any actual malice. Here the defendant contends that the allegations of the complaint that the editorial was published "in a reckless, wanton and careless manner" is refuted by the affidavit of the editorial writer. This issue is one of fact to be disposed of upon trial.[11] The defendant's cross-motion for summary judgment must likewise be denied.

As to plaintiff's motion for summary judgment, it is equally clear that the issues of fact as to (1) whether the publication referred to the plaintiff, and (2) whether it sustains the innuendos and could reasonably be understood to defame the plaintiff, or whether it was, as urged by the defendant, an impersonal comment on the principle of law involved in the Supreme Court decision and its possible future effect, require its denial.

Accordingly the plaintiff's motions and the defendant's motion are each denied.

Settle order on notice.

8. Hartmann v. American News Co., 7 Cir., 171 F.2d 581, certiorari denied 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719; Mencher v. Chesley, 297 N.Y. 94, 100, 75 N.E.2d 257; Tracey v. Wm. J. Kline & Son, 274 App.Div. 149, 151, 81 N.Y.S.2d 1.

9. Grant v. Readers Digest Ass'n, Inc., 2 Cir., 151 F.2d 733, certiorari denied 326 U.S. 797, 66 S.Ct. 492, 90 L.Ed. 485; Mencher v. Chesley, 297 N.Y. 94, 75 N.E. 2d 257; Levy v. Gelber, 175 Misc. 746, 25 N.Y.S.2d 148; Boudin v. Tishman, 264 App.Div. 842, 35 N.Y.S.2d 760.

10. Bingham v. Gaynor, 203 N.Y. 27, 96 N.E. 84; Seelman, Law of Libel and Slander, p. 234.

11. Cf. National Labor Relations Board v. Dinion Coil Co., 2 Cir., 201 F.2d 484, 487; Dyer v. MacDougall, 2 Cir., 201 F. 2d 265.