(39 App. Div. 525.)

### ROBINSON v. EVENING POST PUB. CO.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

LIBEL—MITIGATION OF DAMAGES—NEWS AGENCY.

> In an action for libel, a plea, in mitigation of damages, that defendant received the matter complained of in the usual course of business from a reputable news agency, is insufficient where it does not further allege that the publisher had reason to believe, and did believe, that the information so received was true.

Appeal from special term, New York county.

Action by John Robinson against the Evening Post Publishing Company. There was an interlocutory judgment sustaining a demurrer to the second separate defense of the answer, and overruling a demurrer to the third separate defense (55 N. Y. Supp. 62), and from that part of the judgment overruling the demurrer to the third defense plaintiff appeals. Reversed.

The action is to recover damages for a libel alleged to have been published by the defendant, which, in brief, charged that the plaintiff had been sold by his wife for $25. For a third separate and distinct defense, the defendant alleged, in mitigation of damages, "that it received the matter complained of in the complaint in the usual course of its business from the Associated Press, a reputable news agency, then engaged in the business of supplying daily newspapers in the city of New York and elsewhere with news items, such article having been prepared by a regular news reporter of such Associated Press, who is a competent and experienced man; and that the information upon which the said article was prepared by such news reporter was communicated to him in the usual course of his business of obtaining news for the newspapers constituting such Associated Press." The plaintiff demurred to this defense, but his demurrer was overruled, and the question presented on this appeal is whether the facts in the form alleged are in mitigation, or are relevant or material to the issue between the parties.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Wm. McM. Speer, for appellant.

Lawrence Godkin, for respondent.

O'BRIEN, J. The facts which may be proved in mitigation of damages are stated by text writers to be "any circumstances which tend to disprove malice, and do not tend to prove the truth of the charge"; or, differently expressed, "mitigating circumstances are those which disprove malice." It is nigh impossible to reconcile the authorities, for, though cases can be found in support of the rule thus broadly stated (Bush v. Prosser, 11 N. Y. 347; Gorton v. Keeler, 51 Barb. 481), there are others which apparently qualify it. Thus Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 491, and Cameron v. Association (Sup.) 7 N. Y. Supp. 739, are in seeming conflict with Morey v. Association, 123 N. Y. 207, 25 N. E. 161, and Van Alstyne v. Printing Co., 25 App. Div. 282, 49 N. Y. Supp. 523, and Palmer v. Publishing Co., 31 App. Div. 210, 52 N. Y. Supp. 539. In Cameron v. Association it was said: "The facts and circumstances surrounding the sending of the condensed dispatch were very pertinent on the question of malice." Yet in the Morey Case, supra, decided subsequently, where the defendant offered to show that the article was

telegraphed to it by a correspondent, and that the latter had heard that a breach of promise suit had been commenced against the plaintiff, and also to show how and where he obtained his information, the ruling excluding such evidence was held to be no error. As said in the opinion of the court of appeals:

"This evidence was excluded by the trial judge, because the defendant did not have any information on the subject at the time of the publication. It published the libelous article without any inquiry, and without any knowledge on the subject, and hence it was not entitled to the evidence for any purpose. The evidence had no bearing upon its good faith, and could not be used to rebut malice, or to mitigate the damages. It received the libelous article from its correspondent, who was not its agent in the sense that his act was its act, and his information its information, and it could receive no advantage from the fact that he was imposed on or innocently mistaken."

The rule thus stated was followed in the Case of Van Alstyne, supra, which was decided by the appellate division in the Fourth department in February, 1898, and is referred to with approval in the Palmer Case, supra, decided by this department in June, 1898, as shown by the following extract from the opinion:

"The defendant made it appear that the information upon which it relied for the publication of this libel was given to it by the United Press Association, which seems to be an organization of several newspapers for the purpose of collecting and disseminating to its members the current news. The claim of the defendant in this regard was that it had employed the United Press for this purpose for a considerable length of time, and that it placed confidence in the accuracy of the information which it received. The publisher of the paper testified that this was a news item, and that he did not consider it necessary in general to verify such items as he received from the United Press, because he considered that a reliable source of information. The article was therefore published, as it was claimed, upon the authority of the United Press, without any attempt by the publisher of the newspaper or any one engaged in publishing it to verify its truth. The fact that it was published in reliance upon the statement of some other person is not a defense. Morey v. Association, 123 N. Y. 207, 25 N. E. 161. But the defendant introduced the evidence for the purpose of enabling it to say that it received this scandalous article from a reliable source, and therefore was not liable for punitive damages, although it made no effort to ascertain its truth before giving it to the world."

If the doctrine promulgated in the Morey Case is to be followed to its logical end, then it is evident that the facts here sought to be set up in mitigation would not be available, because the evidence in support of them would necessarily have to be excluded. We think, however, that the apparent conflict in the authorities can be to some extent reconciled, and a reasonable rule laid down, if we return to first principles for the purpose of determining what may be pleaded and proved in mitigation of damages. In libel actions, in default of justification, the plaintiff is in each and every contingency entitled to compensatory damages, and, in addition, to exemplary or punitive damages to such an amount as the jury may deem it proper to award after considering the facts presented by the defendant to mitigate or lessen such damage. The question is, what facts and circumstances may be shown in mitigation of punitive damages. We find expressions of judges which go to the extent of holding that the facts and circumstances tending to show the source from which the information was received and the manner of its publication are for the jury to consider, "either in mitigation

or aggravation of damages." Edwards v. Times Co., 32 Fed. 813. Such latitude, however, is not permitted under our system of practice or our decisions, which require that the facts and circumstances should constitute a partial defense, and be competent and relevant upon the question of mitigation, and to that end should include such facts and circumstances as are directed to showing good faith in the publication. These will necessarily vary with each case, dependent upon whether the defamatory matter included a charge which, on its face, was improbable or unnatural, as distinguished from one that is of everyday occurrence. Can it be said that such good faith is evidenced by a statement that the article came from a reputable news agency, whose reporter was a competent and experienced man? This excuse or reason for publishing, standing alone, can hardly be said to include the idea that it was published in good faith, because it might well happen with reference to a statement so received that it was known by the receiver to be false, and the subsequent publication would be in no manner justified by the statement that it was received from a reliable source. We think, therefore, that it was essential, as tending to show good faith in publishing, to aver that the publisher had reason to and did believe that the information so received was true. A newspaper which published an improbable story without investigation, from whatever source received, should not be allowed to mitigate the punitive damages which flow from implied malice, unless it can assert and prove that it acted in good faith, and not carelessly or wantonly. In other words, good faith in publishing the article cannot be inferred from the fact merely that the defamatory matter was received from a reliable source, unless it is accompanied by a statement that the publisher had reason to and did believe in the truth of the information received. Our conclusion, therefore, is that a simple averment of the receipt of the alleged defamatory matter from a reliable source is not sufficient, and the demurrer thereto should have been sustained.

The portion of the judgment appealed from therefore is reversed, with costs, and the demurrer sustained, with costs, but with leave to the defendant to answer over on payment of costs in this court and in the court below. All concur.