(71 Misc. Rep. 7.)

HEARST v. NEW YORKER STAATS ZEITUNG.

(Supreme Court, Special Term, New York County. February, 1911.)

1. LIBEL AND SLANDER (§ 19*)—IMPUTATION OF CRIME—LANGUAGE USED— CONSTRUCTION.

The publication in a newspaper of a speech in which the speaker stated that plaintiff had been guilty of forgery and falsification of a public document by doing certain things specifically mentioned, but which did not amount to either of those crimes, is still actionable, where the general reader would understand from the publication that those crimes had in fact been committed.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99; Dec. Dig. § 19.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIBEL AND SLANDER (§ 50½*)—PRIVILEGED COMMUNICATIONS—PUBLICA-
TION OF NEWS.

In such case the publication of the charge that the crimes had been
committed cannot be claimed as privileged, on the ground that it was
a report of what a public official had said in defense of criticism of his
public acts and conduct by the plaintiff, and in defense of plaintiff's
charge against him of malfeasance and incompetency in office, and that
the publication was without malice and in the belief of its truth, since
the commission of the alleged crimes cannot be inferred from the acts
stated as constituting them.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 50½.*]

3. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—TRUTH OF PART OF CHARGE.

In such case, a defense of partial justification which pleads the 'truth
of the facts on which the charges of crime are predicated, but which
fails to allege the truth of the charges of crime, is insufficient.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 219–
225; Dec. Dig. § 94.*]

4. LIBEL AND SLANDER (§ 95*)—MITIGATION OF DAMAGES—BELIEF OF TRUTH.

In such case, a plea in mitigation of damages alleging that the de-
fendant received its report of a speech published from a reliable source,
and published it without malice, believing it to be true, is insufficient
where it does not allege that defendant believed that plaintiff was guilty
of the crimes charged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 227;
Dec. Dig. § 95.*]

5. LIBEL AND SLANDER (§ 59*)—MITIGATION OF DAMAGES—PUBLICATION OF
CHARGE BY PLAINTIFF.

The fact that the alleged libelous article was republished by plaintiff
in his own newspaper, and was sold by him as an item of news to other
papers, was properly set up in mitigation of damages as tending to show
that the mental suffering and mortification caused by the original libel
was not as great as alleged by plaintiff.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 159–
166, 319; Dec. Dig. § 59.*]

6. LIBEL AND SLANDER (§ 94*)—PLEADING—ANSWER—DENIAL.

Where plaintiff for a second cause of action alleged the publication
of another article, alleging by innuendo that defendant falsely charged
and sought to convey to its readers the meaning that the charge of
felony against the plaintiff as previously published was true and had
been so proved, defendant cannot, without denying the meaning attached
to the second article by the plaintiff, justify it by pleading the truth of
the facts on which the charge of crime in the original publication was
founded.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 219–
225; Dec. Dig. § 94.*]

7. LIBEL AND SLANDER (§ 94*)—JUSTIFICATION—SUFFICIENCY.

Where the second cause of action alleged that the second article com-
plained of also contained a charge that plaintiff had resorted to nefarious
methods to throw suspicion on the motives of others, a defense thereto
alleging that plaintiff intentionally suppressed a date to give false color
of support to his attack upon the person, in whose speech, replying to
such attack, the libelous statements were contained, was good as a par-
tial defense.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 219–
225; Dec. Dig. § 94.*]

8. LIBEL AND SLANDER (§ 59*)—JUSTIFICATION—PUBLICATION OF NEWS.

Allegations that defendant received its report of the speech from a
source believed to be reliable, and believed that plaintiff had suppressed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a date, have a tendency to mitigate the damages arising from the charge made by plaintiff's innuendo that plaintiff had lied and misrepresented facts contained in the second cause of action.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 159; Dec. Dig. § 59.*]

9. LIBEL AND SLANDER (§ 56*)—DEFENSES—REPUBLICATION OF CHARGE BY PLAINTIFF.

The fact that plaintiff in his own newspaper had republished the original speech in which charges of crime against him were made is no defense to a cause of action based on an article published by defendant commenting on the speech and its own publication thereof, and conveying the impression that the charges of crime improperly made against plaintiff in such speech and defendant's first article were true, and had been proved.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 153–156; Dec. Dig. § 56.*]

10. LIBEL AND SLANDER (§ 27*)—LANGUAGE USED—REPETITION—CONSTRUCTION.

Defendant in an action for libel published in its newspaper the report of a speech wherein the speaker stated that plaintiff had been guilty of forgery and falsification of a public document by doing certain acts specifically set forth, but which did not amount to either of those crimes. On a subsequent day, defendant published another article, commenting on the speech, in which the statement was made that proven forgeries were only quibbles for the plaintiff. *Held*, that this latter charge must be considered as made by the defendant on its own responsibility.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 104; Dec. Dig. § 27.*]

Action by William Randolph Hearst against the New Yorker Staats Zeitung. On demurrer to the various defenses of the answer. Demurrer sustained in part, and in part overruled.

Affirmed 129 N. Y. Supp. 1126.

Clarence J. Shearn, for plaintiff.
Amend & Amend, for defendant.

GREENBAUM, J. Plaintiff demurs to 15 separate defenses interposed in an action for libel upon the ground that each of them is insufficient in law on the face thereof. The complaint alleges three causes of action, to each of which the defendant sets up five separate defenses. The first cause of action is based upon an alleged publication on April 29, 1910, in defendant's newspapers of a report of a speech delivered by Mayor Gaynor, the mayor of the city of New York, at a joint banquet of the "Associated Press" and the "American Publishers' Association" on "The Press and Its Relation to Public Officials."

In the report complained of, after stating that Mayor Gaynor had said "a newspaper publisher or manager who is out only to cut throats is a shameful spectacle," the complaint purports to quote further from said speech as follows:

"Let me explain this by an example. Only a short time ago, on the 15th of this month, W. R. Hearst printed in his principal newspaper the facsimile of a $48,000 warrant drawn upon the city treasurer, with headings and an article in which the warrant was charged to the account of the present

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mayor. In it it was maintained I had fixed the amount and paid it. The facsimile is printed to prove this. In this facsimile the place where the date should be is left vacant. When you look at the original, which I have also here, you can see plainly the date 'Dec. 31, 1909.' Furthermore, you see on the original that the certification through which the claim became binding upon the city, was dated December 29. This date is also missing on the facsimile. In plain words, two crimes, punishable by state's prison, namely, fraud and forgery of a public document, were committed in the zeal of this newspaper publisher (meaning the plaintiff), in order to hurt the Mayor of the City of New York. When, two or three days later; he heard that members of the grand jury had taken cognizance of the matter, he published the excuse that the dates in the original had been so faint that they did not show in the photographic reproduction. You see in the original that the date is plainer than all the rest. The truth is—as I have been assured—that the dates were routed out of the plate by a machine. A view of the warrant as falsely printed here shows that this also has been done with the date of December 29. I do not call your attention to this mean crime because I am embittered by it. A public officer must learn to suffer patiently. It is high time that these forgers and calumniators were in prison, and the day is not far off when some of them will be there."

It is also alleged:

"That the charge in said publication contained, that the plaintiff had been guilty of the crime of forgery and falsification of a public document, was false."

In its answer the defendant sets up as its first defense to the first cause of action a copy of the publication of April 15, 1910, in plaintiff's newspaper, of its original article relating to the charges against the mayor, together with a copy of the purported facsimile of the warrant and check accompanying said article, and a copy of the entire address of Mayor Gaynor, delivered on or about April 29, 1910, in reply to the charges made against him by the plaintiff in his newspaper as aforesaid; and it is then alleged that the false reproduction of the said warrant or draft was made with the knowledge, consent, and procurement of the plaintiff, and that the publication complained of was "the report of what a public official said in a defense of a criticism of his public acts and conduct by the plaintiff, and in defense of a charge of malfeasance and incompetency in office, which had been made against him in his official capacity and was published by the defendant without malice to the plaintiff and in the belief that it was true, and is therefore privileged." Assuming, as we must for the purposes of the demurrer, that the plaintiff knowingly and deliberately published in his newspaper a false and misleading facsimile of the warrant above referred to, there can be no doubt that such an act did not constitute either the crime of forgery or a crime that has been described as that of "falsification of a public document." ·

Aside from the incorrect facsimile referred to, the headlines of the article published in plaintiff's newspaper states, "One of the administrator's first acts is to fix award for the chief nominator of the man who now is mayor," and then proceeds with particularity to detail that an alleged exorbitant claim of $48,000 for legal services, which was the subject of the controversy between the mayor and plaintiff's newspaper, had been audited in December, 1909, during the administration immediately preceding that of Mayor Gaynor's; that the then comptroller's office drew the warrant for the claim on De-

cember 31st; that the warrant was sent along the customary course to the mayor's office and signed by the mayor's acting clerk (referring to the previous Mayor McClellan's clerk); that it was then sent to the city chamberlain, James J. Martin, for final signature, without which it was invalid; and that, before the chamberlain made up his mind to sign the warrant, it was sent for by and returned to Mayor McClellan. The article then continues as follows:

"I never received it after that, said Mr. Martin at his home last night. I know it was in the mayor's office when Mr. McClellan went out of office, and was undoubtedly part of the unfinished business he left to Mayor Gaynor."

The article further states that Mr. Martin remained in his office until Monday afternoon, January 3d, when he finally turned over the office to his successor, Mr. Hyde, and that it was on January 4th that the warrant was turned over to the drawee thereof, "having been returned from the mayor's office to the chamberlain" (referring to the new chamberlain.

The article in effect charged Mayor Gaynor with having permitted this alleged excessive bill to be paid in consideration of political obligations and of benefits and services rendered to him at the hands of the recipient of the check for $48,000, and that, had he desired, he could have prevented its payment. It was to this charge that Mayor Gaynor felt called upon to reply. The only statement in Mayor Gaynor's speech, so far as the pleadings show, which refers to his alleged connection with the transaction is the following:

"I need not say to you that the indebtedness for which this draft was drawn was incurred during several years before the present members of the city government were elected, and that it was audited and made a fixed and legal obligation of the city before we took office, instead of any of us 'fixing' the award as the article says."

The other portions of the speech relevant to this issue are directed to the publication of the facsimile warrant with the omitted dates and the alleged libelous utterances against the plaintiff.

[1] In determining the sufficiency of this defense, the language of the publication "is to be construed in the sense and as it would be understood by persons generally, giving to the words their ordinary meaning." Brush v. Blot, 16 App. Div. 80, 44 N. Y. Supp. 1073. Applying this test to the language of the publication, I am of opinion that the belief would be created in ordinary minds that the plaintiff had been guilty of the crime of forgery in its recognized legal sense. Aside from the mere use of the word "forgery," which is the correct legal description of a crime cognizable by the criminal law, the publication complained of goes further, and distinctly refers to the plaintiff as a forger and to his acts as a state's prison offense. In this connection the distinction must be borne in mind between a slanderous utterance and a libelous publication. A statement may not be slanderous per se, and yet be libelous per se. Written or published words tending to hold one up to public contempt, and disgrace and "to induce an evil opinion of him in the minds of right thinking people," would be libelous per se, "even though the same words spoken would not

have been actionable." 25 Cyc. 250. These considerations leave no doubt in my mind as to the meaning which should be attributed by the general reader to the publication, and I do not think that the fact that the charge was predicated upon an insufficient legal basis would affect the sense in which it would be generally received and understood. The mayor was privileged to explain his connection with the transaction; to repel any insinuation of his relation to it, if such were the fact; or to justify his action in the matter and fairly to comment upon or criticise the plaintiff's conduct in attacking him. If he believed that the facsimile warrant was intentionally falsified by the plaintiff to mislead the public, he might properly have denounced plaintiff's method of attack as dishonorable and his conduct as reprehensible. Whether the limits of fair criticism or comment have been transcended, or whether the occasion has been used for the utterance of a false and defamatory statement of facts, would ordinarily present a question for the jury. Triggs v. Sun Print. & Pub. Assn, 179 N. Y. 144, 71 N. E. 739, 61 L. R. A. 612, 103 Am. St. Rep. 841; Hamilton v. Eno, 81 N. Y. 116.

[2] But, where the so-called privileged occasion has been used for the utterance of conceded misstatements of material facts which are defamatory in character, it becomes the duty of the court to decide as matter of law that the privilege was lost by an unwarranted, slanderous, or libelous attack. Hoey v. New York Times Co., 138 App. Div. 149, 122 N. Y. Supp. 978.

It is therefore important to determine in this case whether the admittedly false charges of forgery and falsification are to be deemed absolute misstatements of facts or in the nature of extravagant or unreasonable comment for the consideration of the jury. It seems to me that the charge of forgery must be treated as a statement of fact as distinguished from mere comment, taken in its primary and commonly accepted meaning. Lefroy v. Burnside (L. R.) 4 Ir. 556, 566; Merivale v. Carson, 20 Q. B. D. 270, 281, 284. A statement of fact may be fair comment upon another fact, but, in order for the former to be excused, it must be capable of being reasonably inferred from the fact upon which it is a comment (Lefroy v. Burnside, supra; O'Brien v. Marquis of Salisbury, 6 L. T. Rep. 133, 137; Merivale v. Carson, supra, 284); and whether such inference of fact may be reasonably drawn presents a question of law for the court. Lefroy v. Burnside, supra. Applying these principles to the publication in question, it must be held as a matter of law that the crime of forgery cannot be inferred from the facts upon which it is predicated, as these facts are concededly incapable of supporting a charge of this character. The defense of privilege cannot, therefore, prevail, and the demurrer to this defense must be sustained.

[3] The insufficiency of the second defense of partial justification necessarily follows from the foregoing discussion. The defendant does not attempt to justify the charge of forgery, but simply pleads that the date of the warrant was intentionally suppressed by the plaintiff in the facsimile reproduction published in plaintiff's newspaper; and this, as has already been observed, may not be held sufficient justification of the libelous charges.

[4] The third defense in mitigation of damages must also be deemed insufficient. In this defense it is pleaded that the defendant received the report of the speech published by it from a reporter or news agency upon which it was accustomed to rely for correct information, and which it had found uniformly reliable and correct; that it accepted the said report, relying upon the reporter or news agency and believing the news items and each and every part thereof to be true, and without knowledge that it was untrue; and that it published the said speech without malice. It will be noted that the defendant does not plead that it believed that the plaintiff was guilty of the crime of forgery, or any crime, or that the news agency or reporter advised the defendant that the facts upon which the charges were based did constitute such crimes or furnished to the defendant any opinion or information upon that subject and upon which defendant relied. All the facts upon which the charges of forgery are based appear upon the face of the article; and, though the defendant believed the facts as to a false facsimile, the charges of felony based thereon were unfounded. It seems to me that, under the peculiar situation presented, and in the absence of an allegation that defendant believed the libelous charges to be true, and that it believed the plaintiff was guilty of the crimes attributed to him in the speech in question, this defense must fall.

[5] The demurrers to the fourth and fifth defenses involve essentially the same question, and may be conveniently considered together. In these defenses it is alleged, in substance, that the plaintiff caused the alleged libel of which he complains to be published in the New York American and the New York Evening Journal, two newspapers alleged to be controlled by him, and that he also caused a corporation known as the Hearst Syndicate, of which it is alleged he is the owner and principal stockholder, to sell the alleged libel as an item of news to various newspapers published in the city of New York and elsewhere. It is well settled that, in determining the amount of damages where the publication is libelous per se, the jury has the right to consider the mental suffering which may have been occasioned to the plaintiff by the publication. Van Ingen v. Star Co., 1 App. Div. 429, 433, 37 N. Y. Supp. 114. In 16 American and English Encyclopedia of Law (at page 1107), it is said:

"It cannot be disputed that it is open to the defendant to show also matters which legitimately tend to establish that the actual injury sustained by the plaintiff is not so great as he would make it appear, and thus reduce the amount of actual damages."

The republication of the article in plaintiff's newspapers and its sale to others may it seems to me be a matter for the consideration of the jury in determining the extent of the shame, mortification, and disgrace suffered by the plaintiff. The jury might properly infer from these facts that the plaintiff did not regard the publication as reflecting seriously upon his reputation or of such a nature as to discredit him in the eyes of the community, and in this respect these facts may bear directly upon and tend to mitigate some of the elements that would enter into the determination of the amount of damages to which he

may be entitled. The demurrer to these defenses should be overruled.

[6] For a second cause of action, the plaintiff reiterates the publication of the article which forms the subject of the first cause of action, and alleges that upon the 30th of April, 1910, the defendant published in its newspaper an article commenting upon the speech of Mayor Gaynor in refutation of the attack of the plaintiff upon him and in the course of which reference is made to the "nefarious methods used by sensational papers to throw suspicion on the motives of people whom they do not like and who are not willing to further their schemes." The plaintiff further alleges by way of innuendo that the said publication falsely charged and sought to convey to its readers the meaning that the charge of felony against the plaintiff in the publication of the defendant on April 29, 1910, was true, and had been so proved by subsequent investigation, and that the accusation of the plaintiff against the mayor, that he had failed to prevent the payment of the check, was a false statement, and that the plaintiff had lied and misrepresented the facts concerning it, and that the mayor had nothing whatever to do with the payment of the warrant.

The first defense of privilege must be held insufficient. This is pleaded as a complete defense, and must therefore contain all that is necessary to answer the entire cause of action. Sbarboro v. Health Dept., 26 App. Div. 177, 179, 49 N. Y. Supp. 1033.

The meaning assigned to a publication by innuendo is an issuable fact. Hollingsworth v. Spectator Co., 53 App. Div. 291, 65 N. Y. Supp. 812. The defendant may deny that the defamatory matter bears the assigned meaning and justify it in its primary sense only. Morse v. Press Pub. Co., 49 App. Div. 375, 378, 63 N. Y. Supp. 423; Bower on Defamation, 93, 94. The defendant, however, fails to deny in this defense the innuendo attached to the publication upon which this cause of action is based, and it must therefore be deemed admitted that the charge of forgery was reiterated therein against the plaintiff. In this aspect of the pleading the defense of privilege must be deemed defective for the reasons stated in the discussion of the similar defense to the first cause of action.

[7] The second defense of partial justification is, I think, sufficient. If the jury should find that the plaintiff intentionally suppressed the date of the warrant in order to give false color of support to his attack upon the mayor, or that the facts upon which the plaintiff charged the mayor with the responsibility for the payment of the claim were unfounded, then they might reasonably find that the plaintiff had misrepresented the facts concerning the warrant, and thus falsely asserted the mayor's responsibility therefor.

[8] The third defense in mitigation of damages should be held sufficient. This defense is substantially to the same effect as the third defense to the first cause of action. If the defendant received the report of the mayor's speech from a news agency or a reporter which it had uniformly found reliable and correct, and published such report in the belief that the facts therein contained respecting the suppression of the date of the warrant were true, and further

believed that the attack upon the mayor was unfounded, in view of the circumstances therein set forth, this may tend to mitigate the damages arising out of some of the alleged libelous charges attributed by the innuendo, to wit, that the plaintiff lied and misrepresented the facts of the matter and falsely asserted the mayor's responsibility for the payment of the claim. Robinson v. Evening Post Pub. Co., 39 App. Div. 525, 528, 529, 57 N. Y. Supp. 303.

[9] The fourth and fifth defenses to this cause of action are identical in language with the like defenses interposed to the first and second causes of action. It is not claimed, however, in either of these defenses that the publication which is the basis of the second cause of action was either republished in plaintiff's newspapers or resold by him to other newspapers. It was the evident theory of the pleader that the several publications relate to a single controversy, and are so interrelated that the publication and resale of the mayor's original speech, out of which the article pleaded in the second cause of action arises, may be considered in mitigation of the damages arising out of any subsequent libel growing out of the same controversy. I am of opinion, however, that the repetition of the charges by the defendant in a subsequent issue of its newspaper must be treated, in view of the admission of the innuendo to which reference has already been made, as a distinct and independent libel by the defendant. It must be assumed to assert the defendant's belief in the truth of the forgery charges and its own opinion of the plaintiff's conduct; and, while plaintiff might in the course of a public controversy have been willing to republish his adversary's reply, I am unable to perceive how this act in anywise mitigates the damage arising from disgraceful reflections upon plaintiff's conduct and defamatory charges made against him by the defendant in a publication which adopted as its own the charges originally made by Mayor Gaynor. The demurrer to this defense should be sustained.

In the third cause of action the plaintiff realleges the libels embraced in the first and second causes of action, and then alleges a publication in defendant's newspaper on May 2, 1910, referring to the charges of felony by Mayor Gaynor, already discussed, in which the following statement appeared: "Proven forgeries, you know, are for him (meaning the plaintiff) nothing but 'quibbles.'" The first defense of privilege to the third cause of action cannot be sustained. Considered merely as a repetition of the original charge made in the mayor's speech, it is defective for the reasons already pointed out in the discussion of the similar defenses to the first and second causes of action; but it is also insufficient upon a further ground. The defendant does not comment upon the speech of the mayor or state any fact in relation thereto, but asserts and declares upon its own responsibility that the charge of forgery was proven. In Odgers on Libel and Slander, 193, it is said:

"But if, in repeating the statements of the speaker or witness, the writer expressly or impliedly warrants the accuracy of such statements and asserts that they are true, then he makes them his own statements, and he must justify. He is no longer commenting upon the speech or the evidence. He is asserting facts."

Under the principles laid down in the discussion of the second defense interposed to the first cause of action, the demurrer to the second defense of partial justification must be sustained; and for the reasons stated in considering the demurrers to the similar defenses interposed to the first and second causes of action the demurrer to the third, fourth, and fifth defenses in mitigation of damages must be sustained.

Costs are awarded plaintiff, with leave, however, to defendant to serve an amended answer upon payment of costs.